# 14-1159-cv

## United States Court of Appeals

*for the*

## Second Circuit

RENAISSANCE ART INVESTORS, L.L.C.,

*Plaintiff-Appellant,*

— v. —

AXA ART INSURANCE CORPORATION,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## APPENDIX

BUCHANAN INGERSOLL & ROONEY PC
*Attorneys for Plaintiff-Appellant*
1290 Avenue of the Americas, 30th Floor
New York, New York 10104
(212) 440-4400

i

# TABLE OF CONTENTS

**Page**

District Court Docket Entries ................................... A-1

Complaint of Plaintiff Renaissance Art Investors, LLC, dated June 26, 2013.................................... A-7

Motion to Dismiss for Lack of Jurisdiction, dated August 20, 2013.................................................... A-13

Affirmation of Dennis M. Wade in Support of Motion, dated August 20, 2013............................... A-15

Exhibit A to Wade Affirmation - Complaint, dated July 21, 2010, filed in the Matter of *AXA Art Ins. Corp. v. Renaissance Art Investors, LLC*, No. 10-cv-5881 ............................ A-20

Exhibit B to Wade Affirmation - Letter from Barry I. Slotnick to the Honorable Paul A. Crotty, dated October 15, 2010 ................. A-32

Exhibit C to Wade Affirmation - Summons and Complaint, dated October 22, 2010 filed in the Matter of *AXA Art Ins. Corp. v. Renaissance Art Investors, LLC*, Index No. 651844/10 ................................................... A-35

Exhibit D to Wade Affirmation - Various E-mail Correspondence ............................ A-48

Exhibit E to Wade Affirmation - So-Ordered Stipulation of Dismissal, dated November 29, 2010 ................................................ A-52

Exhibit F to Wade Affirmation - Excerpts of Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, dated March 18, 2011 filed in the Matter of *AXA Art Ins. Corp. v. Renaissance Art Investors, LLC*, Index No. 651844/10 ................................................... A-53

ii

**Page**

Exhibit G to Wade Affirmation -
Transcript of Proceedings held before the
Honorable Bernard J. Fried, dated June 13, 2011..    A-56

Exhibit H to Wade Affirmation -
Memorandum Decision and Order of the
Honorable Bernard J. Fried, dated July 25, 2011
filed in the Matter of *AXA Art Ins. Corp. v.
Renaissance Art Investors, LLC*, Index No.
651844/10 ............................................................    A-96

Exhibit I to Wade Affirmation -
Excerpts of Reply Brief for Plaintiff-Appellant in
Action No. 1 and Defendant-Appellant in Action
No. 2, filed in the Matter of *AXA Art Ins. Corp. v.
Renaissance Art Investors, LLC*, Index No.
651844/10 ............................................................    A-105

Exhibit J to Wade Affirmation -
Order of the Appellate Division, First
Department, entered January 29, 2013 in the
Matter of *AXA Art Ins. Corp. v. Renaissance Art
Investors, LLC*, Index No. 651844/10 ...................    A-110

Exhibit K to Wade Affirmation -
Order of the New York State Court of Appeals,
entered May 7, 2013 ..............................................    A-113

Exhibit L to Wade Affirmation -
Summons and Complaint, dated June 27, 2013.....    A-114

Proposed Order .........................................................    A-122

Plaintiff Renaissance Art Investors, LLCs
     Opposition to Motion to Dismiss, dated
     September 10, 2013
     (Omitted Herein)

     Exhibit 1 to Opposition -
     Proposed Declaration..............................................    A-124

iii

**Page**

Exhibit 2 to Opposition -
Letter from Dennis M. Wade to the Honorable
Paul A. Crotty, dated November 2, 2010 ............... A-127

Exhibit 3 to Opposition -
Proposed Stipulation of Dismissal, dated
November 29, 2010 ................................................ A-131

Exhibit 4 to Opposition -
Excerpts of Plaintiff AXA's Memorandum of
Law in Opposition to Defendant RAI's Motion to
Dismiss, filed in the Matter of *AXA Art Ins. Corp.
v. Renaissance Art Investors, LLC*, Index No.
651844/10 .............................................................. A-133

Exhibit 5 to Opposition -
Excerpts of Brief of Defendant/Plaintiff-
Respondent AXA Art Insurance Corporation,
filed in the Matter of *AXA Art Ins. Corp. v.
Renaissance Art Investors, LLC*, Index No.
651844/10 .............................................................. A-136

Exhibit 6 to Opposition -
Letter from William K. Suter to H. Christopher
Bartolomucci, dated July 25, 2013 ....................... A-139

Exhibit 7 to Opposition -
Letter from Dennis M. Wade to the Honorable
Paul A. Crotty, dated July 12, 2013 ...................... A-142

Order of the Honorable Paul A. Crotty, dated
March 17, 2014 ...................................................... A-146

Judgment, dated March 24, 2014.............................. A-150

Notice of Appeal, dated April 16, 2014 ................... A-151

CLOSED,APPEAL,ECF,SIMILAR

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:13-cv-04452-PAC

Renaissance Art Investors, L.L.C. v. AXA Art Insurance
Corporation
Assigned to: Judge Paul A. Crotty
Similar Case: 1:10-cv-05581-PAC
Cause: 28:2201 Constitutionality of State Statute(s)

Date Filed: 06/27/2013
Date Terminated: 03/24/2014
Jury Demand: None
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: Federal Question

**Plaintiff**

**Renaissance Art Investors, L.L.C.**          represented by **Barry Ivan Slotnick**
Buchanan Ingersoll & Rooney P.C.
(NYC)
1290 Avenue of the Americas, 30th
Floor
New York, NY 10104
(212) 440-4400 x4444
Fax: (212) 440-4401
Email: barry.slotnick@bipc.com
*ATTORNEY TO BE NOTICED*

**H Christopher Bartolomucci**
Bancroft PLLC
1919 "M" Street, N.W.,
Suite 470
Washington, DC 20036
(202)-234-0090
Fax: (202)-234-2806
Email:
cbartolomucci@bancroftpllc.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kristi Akins Davidson**
Buchanan Ingersoll & Rooney P.C.
(NYC)
1290 Avenue of the Americas, 30th
Floor
New York, NY 10104
(212) 440-4400
Fax: (212) 440-4401
Email: kristi.davidson@bipc.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **AXA Art Insurance Corporation** | represented by | **Dennis M Wade** |

**Dennis M Wade**
Wade Clark Mulcahy (111 B'way)
111 Broadway
New York, NY 10006
(212)227-6292
Fax: (212)-267-9470
Email: dwade@wcmlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Menachem Mendel Simon**
Wade Clark Mulcahy
111 Broadway
New York, NY 10006
(212) 267-1900
Fax: (212) 267-9470
Email: msimon@wcmlaw.com
*ATTORNEY TO BE NOTICED*

**Michael A. Bono**
Wade Clark Mulcahy
111 Broadway
New York, NY 10006
(212)267-1900
Fax: 212-267-9470
Email: mbono@wcmlaw.com
*ATTORNEY TO BE NOTICED*

**Steven Michael Kaye , Jr.**
Wade Clark Mulcahy (111 B'way)
111 Broadway
New York, NY 10006
(212)-267-1900
Fax: (212)-267-9470
Email: skaye@wcmlaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/27/2013 | 1 | COMPLAINT against AXA Art Insurance Corporation. (Filing Fee $ 350.00, Receipt Number 1070809)Document filed by Renaissance Art Investors, L.L.C. (laq) (laq). (Entered: 06/28/2013) |
| 06/27/2013 | | SUMMONS ISSUED as to AXA Art Insurance Corporation. (laq) (Entered: 06/28/2013) |

| 06/27/2013 | | CASE REFERRED TO Judge Paul A. Crotty as possibly similar to 1:10-cv-5581. (laq) (Entered: 06/28/2013) |
|---|---|---|
| 06/27/2013 | | Case Designated ECF. (laq) (Entered: 06/28/2013) |
| 07/02/2013 | 2 | SUMMONS RETURNED EXECUTED Summons and Complaint served. AXA Art Insurance Corporation served on 6/28/2013, answer due 7/19/2013. Service was accepted by Debra Lynn Carp, Human Resources Manager and a person authorized to accept service of process on behalf of Defendant. Document filed by Renaissance Art Investors, L.L.C.. (Davidson, Kristi) (Entered: 07/02/2013) |
| 07/03/2013 | 3 | NOTICE OF APPEARANCE by Dennis M Wade on behalf of AXA Art Insurance Corporation. (Wade, Dennis) (Entered: 07/03/2013) |
| 07/03/2013 | 4 | NOTICE OF APPEARANCE by Michael A. Bono on behalf of AXA Art Insurance Corporation. (Bono, Michael) (Entered: 07/03/2013) |
| 07/03/2013 | 5 | NOTICE OF APPEARANCE by Menachem Mendel Simon on behalf of AXA Art Insurance Corporation. (Simon, Menachem) (Entered: 07/03/2013) |
| 07/08/2013 | | CASE ACCEPTED AS SIMILAR. Create association to 1:10-cv-05581-PAC. Notice of Assignment to follow. (pgu) (Entered: 07/08/2013) |
| 07/08/2013 | 6 | NOTICE OF CASE ASSIGNMENT to Judge Paul A. Crotty. Judge Unassigned is no longer assigned to the case. (pgu) (Entered: 07/08/2013) |
| 07/08/2013 | | Magistrate Judge Henry B. Pitman is so designated. (pgu) (Entered: 07/08/2013) |
| 07/18/2013 | 7 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for H. Christopher Bartolomucci to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8700937. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Renaissance Art Investors, L.L.C.. (Attachments: # 1 Declaration of H. Christopher Bartolomucci in support of motion to admit pro hac vice, # 2 Text of Proposed Order granting pro hac vice admission, # 3 Certificates of Good Standing from the District of Columbia and Virginia)(Bartolomucci, H) Modified on 7/18/2013 (bwa). (Entered: 07/18/2013) |
| 07/18/2013 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice regarding Document No. 7 MOTION for H. Christopher Bartolomucci to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8700937. Motion and supporting papers to be reviewed by Clerk's Office staff.. Certificates of Good Standing must be issued form the State court. Re-file the document as a Corrected Motion to Appear Pro Hac Vice and attach a valid Certificate of Good Standing, issued within the past 30 days. (bwa)** (Entered: 07/18/2013) |
| 07/22/2013 | | NOTICE of Hearing: Pre-Motion Conference set for Tuesday, July 30, 2013 at 03:15 PM in Courtroom 11D, 500 Pearl Street, New York, NY 10007 before Judge Paul A. Crotty, U.S.D.J. Requests for adjournment will be considered if made in writing and otherwise in accordance with Judge Crotty's Individual Practices. ----- A PDF IS NOT ATTACHED TO THIS ENTRY---- (By: Marlon Ovalles - Courtroom Deputy). (mov) (Entered: 07/22/2013) |

| | | |
|---|---|---|
| 07/24/2013 | 8 | AMENDED MOTION for H. Christopher Bartolomucci to Appear Pro Hac Vice. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Renaissance Art Investors, L.L.C.. (Attachments: # 1 Declaration of H. Christopher Bartolomucci in support of motion to admit pro hac vice, # 2 Text of Proposed Order granting pro hac vice admission, # 3 Certificates of Good Standing from the District of Columbia and Virginia) (Bartolomucci, H) (Entered: 07/24/2013) |
| 07/24/2013 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 8 AMENDED MOTION for H. Christopher Bartolomucci to Appear Pro Hac Vice. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 07/24/2013) |
| 07/25/2013 | 9 | ORDER granting 8 Motion for Christopher Bartolomucci to Appear Pro Hac Vice (HEREBY ORDERED by Judge Paul A. Crotty)(Text Only Order) (Crotty, Paul) (Entered: 07/25/2013) |
| 07/30/2013 | | Minute Entry for proceedings held before Judge Paul A. Crotty: Pre-Motion Conference held on 7/30/2013. REMARK: The schedule on AXA's motion is as follows: Motion: 08/20/13; Response: 09/10/13 and Reply: 09/17/13. See transcript for complete details of this proceeding. Visit------ http://www.nysd.uscourts.gov/courtrm_tech.php -------with respect to ordering a transcript of a recorded proceeding via "Courtflow." (mov) (Entered: 07/30/2013) |
| 08/20/2013 | 10 | MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Cause of Action*. Document filed by AXA Art Insurance Corporation. Responses due by 9/10/2013(Wade, Dennis) (Entered: 08/20/2013) |
| 08/20/2013 | 11 | AFFIRMATION of Dennis M. Wade in Support re: 10 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Cause of Action*.. Document filed by AXA Art Insurance Corporation. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Text of Proposed Order, # 14 Certificate of Service)(Wade, Dennis) (Entered: 08/20/2013) |
| 08/20/2013 | 12 | MEMORANDUM OF LAW in Support re: 10 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Cause of Action*.. Document filed by AXA Art Insurance Corporation. (Wade, Dennis) (Entered: 08/20/2013) |
| 08/26/2013 | 13 | TRANSCRIPT of Proceedings re: Proceeding held on 7/30/2013 before Judge Paul A. Crotty. Court Reporter/Transcriber: Carole Ludwig, (212) 420-0771. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/19/2013. Redacted Transcript Deadline set for 9/30/2013. Release of Transcript Restriction set for 12/2/2013.(ca) (Entered: 08/26/2013) |
| 08/26/2013 | 14 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Proceeding proceeding held on 07/30/2013 has |

| | | |
|---|---|---|
| | | been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(ca) (Entered: 08/26/2013) |
| 09/10/2013 | 15 | RESPONSE in Opposition to Motion re: 10 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Cause of Action*.. Document filed by Renaissance Art Investors, L.L.C.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7) (Bartolomucci, H) (Entered: 09/10/2013) |
| 09/17/2013 | 16 | REPLY MEMORANDUM OF LAW in Support re: 10 MOTION to Dismiss for Lack of Jurisdiction *and for Failure to State a Cause of Action*.. Document filed by AXA Art Insurance Corporation. (Wade, Dennis) (Entered: 09/17/2013) |
| 03/17/2014 | 17 | ORDER granting 10 Motion to Dismiss for Lack of Jurisdiction. Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court GRANTS AXA's motion to dismiss with prejudice. The Clerk of Court is directed to enter judgment and to terminate this case. (Signed by Judge Paul A. Crotty on 3/17/2014) (ft) (Entered: 03/17/2014) |
| 03/17/2014 | | Transmission to Judgments and Orders Clerk. Transmitted re: 17 Order on Motion to Dismiss/Lack of Jurisdiction to the Judgments and Orders Clerk. (ft) (Entered: 03/17/2014) |
| 03/24/2014 | 18 | CLERK'S JUDGMENT: That for the reasons stated in the Court's Order dated March 17, 2014, pursuant to Fed. R. Civ. P. 12(b)(1), the Court grantes AXA's motion to dismiss with prejudice; accordingly, the case is closed. (Signed by Clerk of Court Ruby Krajick on 3/24/2014) (Attachments: # 1 Notice of Right to Appeal)(dt) (Entered: 03/24/2014) |
| 03/24/2014 | | Terminate Transcript Deadlines (dt) (Entered: 03/24/2014) |
| 04/16/2014 | 19 | NOTICE OF APPEAL from 18 Clerk's Judgment,. Document filed by Renaissance Art Investors, L.L.C.. Filing fee $ 505.00, receipt number 0208-9574007. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Davidson, Kristi) (Entered: 04/16/2014) |
| 04/17/2014 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 19 Notice of Appeal. (tp) (Entered: 04/17/2014) |
| 04/17/2014 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 19 Notice of Appeal, filed by Renaissance Art Investors, L.L.C. were transmitted to the U.S. Court of Appeals. (tp) (Entered: 04/17/2014) |
| 04/17/2014 | 20 | NOTICE OF APPEARANCE by Steven Michael Kaye, Jr on behalf of AXA Art Insurance Corporation. Filed In Associated Cases: 1:13-cv-04452-PAC, 1:10-cv-05581-PAC(Kaye, Steven) (Entered: 04/17/2014) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/13/2014 10:30:43 | | |
| **PACER Login:** cp5532 | **Client Code:** 253692 | |
| **Description:** Docket Report | **Search Criteria:** 1:13-cv-04452-PAC | |
| **Billable Pages:** 4 | **Cost:** 0.40 | |

A-7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

13 CV 4452

| | |
|---|---|
| RENAISSANCE ART INVESTORS, LLC | ) |
| | ) |
| *Plaintiff,* | ) |
| v. | ) |
| | ) |
| AXA ART INSURANCE CORPORATION | ) |
| | ) |
| *Defendant.* | ) |

Case No. _____

Related to Case No. 10 Civ. 5581 (PAC)

**COMPLAINT OF PLAINTIFF RENAISSANCE ART INVESTORS, LLC**

Plaintiff, by and through its undersigned counsel, alleges as follows:

**INTRODUCTION**

1.     "[T]here are few persons in a better position to understand the meaning of an order of dismissal than the district judge who ordered it." *Scelsa v. City Univ. of New York,* 76 F.3d 37, 42 (2d Cir. 1996).  This is a civil action in which Renaissance Art Investors, LLC ("RAI") seeks a declaration regarding the meaning of an order of dismissal issued by this Court in a prior case between the parties.

2.     In 2010, AXA Art Insurance Corporation ("AXA") filed suit against RAI in this Court seeking a declaration that AXA has no duty to indemnify RAI for the loss of certain artworks covered by AXA insurance policies. *See AXA Art Ins. Corp. v. Renaissance Art Investors, LLC*, No. 10 Civ. 5581 (S.D.N.Y.) (hereinafter, *AXA v. RAI*).  This Court dismissed AXA's action "with prejudice" based upon the parties' stipulation. *See* Stipulation and Order of Dismissal, *AXA v. RAI* (Nov. 29, 2010) (Doc. 12).

3.      The parties also litigated their insurance dispute in New York state court.  RAI argued that this Court's dismissal of AXA's action "with prejudice" is entitled to res judicata effect.  AXA argued that the dismissal has no res judicata effect because, according to AXA, this Court dismissed for lack of subject matter jurisdiction.  Thus far, the state courts have sided with AXA.

4.      To help resolve the dispute, RAI now seeks a declaration that this Court's dismissal of AXA's suit was based upon the parties' stipulation — which requested dismissal "with prejudice" — and was not based upon any finding or determination that this Court lacked subject matter jurisdiction over AXA's claims.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and the doctrine of ancillary jurisdiction.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

7.      Plaintiff Renaissance Art Investors, LLC is a Nevada limited liability company with its principal place of business in Nevada.

8.      Defendant AXA Art Insurance Corporation is a New York corporation with its principal place of business in New York.

## FACTS

9.      RAI and AXA dispute whether AXA is obligated to indemnify RAI for the loss of certain artworks covered by insurance policies issued by AXA to RAI.

**I.      The Federal Court Action**

10.     In July 2010, AXA sued RAI in this Court seeking a declaratory judgment that

AXA has no duty to indemnify RAI.  *See* Complaint, *AXA v. RAI* (Doc. 1).

11.     On October 15, 2010, RAI sent a letter to chambers requesting a pre-motion conference.  RAI indicated that it intended to move to dismiss AXA's complaint on the ground that diversity jurisdiction was lacking.

12.     AXA responded with a letter of its own dated November 2, 2010.  AXA did not agree with RAI's contention that diversity jurisdiction was lacking.  On the contrary, AXA's letter stated that "it is AXA's position that RAI's proposed motion be denied."

13.     No pre-motion conference was held, and RAI did not file a motion to dismiss.

14.     The parties executed and filed a Stipulation of Dismissal, which asked this Court to dismiss AXA's action "with prejudice."  *See* Stipulation of Dismissal, *AXA v. RAI* (Doc. 11).

15.     Counsel for AXA drafted the stipulation, including the "with prejudice" language.

16.     This Court "so ordered" the parties' Stipulation of Dismissal and converted it into a Stipulation and Order of Dismissal.

17.     The Court's Stipulation and Order of Dismissal stated:

> IT IS HEREBY STIPULATED AND AGREED TO, by and between the undersigned, the attorneys of record for all the parties to the above action, that … pursuant to Fed. R. Civ. Proc. 41(a)(1)(A)(ii), the above entitled action for declaratory judgment be, and the same hereby is discontinued with prejudice and without costs to either party as against the other. The Clerk of Court shall close this case. … SO ORDERED.

Stipulation and Order of Dismissal, *AXA v. RAI* (Doc. 12).

## II.    The State Court Action

18.     In October 2010, while AXA's federal action was still pending in this Court, AXA filed a duplicative action against RAI in New York state court asserting the same cause of action as in the federal action.  *See AXA Art Ins. Corp. v. Renaissance Art Investors, LLC*, No.

651844/10 (Sup. Ct. N.Y. Cnty.).

19.    After this Court dismissed AXA's federal action with prejudice, RAI moved to dismiss AXA's state court action based on the doctrine of res judicata.

20.    AXA opposed RAI's motion on the ground that this Court's dismissal in *AXA v. RAI* had been based, according to AXA, on lack of subject matter jurisdiction.

21.    The New York Supreme Court denied RAI's motion to dismiss.  It ruled that this Court's judgment in *AXA v. RAI* was not entitled to res judicata effect because "the Federal Action was discontinued on the basis of lack of subject matter jurisdiction because there was not complete diversity among the parties." *AXA Art Ins. Corp. v. Renaissance Art Investors, LLC*, 936 N.Y.S.2d 57, 2011 WL 3198876, *2 (N.Y. Sup. July 25, 2011).

22.    RAI appealed the New York Supreme Court's ruling to the Appellate Division. The Appellate Division affirmed.  *See Renaissance Art Investors, LLC v. AXA Art Ins. Corp.*, 102 A.D.3d 604 (N.Y. App. Div. 2013).

23.    The New York Court of Appeals denied RAI's motion for leave to appeal.  *See Renaissance Art Investors, LLC v. AXA Art Ins. Corp.*, Mo. No. 2013-278 (N.Y. May 7, 2013).

24.    The dispute between RAI and AXA is ongoing.  RAI intends to seek relief from the New York Supreme Court's judgment on the ground that the court's res judicata ruling was based on a factual mistake, the mistake being the notion that this Court dismissed AXA's federal action for lack of subject matter jurisdiction.

25.    To aid in the resolution of the dispute, RAI asks this Court to declare that its dismissal of AXA's suit in *AXA v. RAI* was based upon the parties' stipulation, which requested dismissal "with prejudice," and was not based upon any finding or determination that this Court lacked subject matter jurisdiction over AXA's claims.

4

26.     To be clear, RAI is not asking this Court to review the state court's decision denying res judicata effect to this Court's judgment in *AXA v. RAI*. RAI is only asking this Court to declare as a factual matter that its dismissal of AXA's action was based upon the parties' stipulation and was not based on any finding or determination that this Court lacked jurisdiction. If this Court so declares, RAI will use the declaration in post-judgment proceedings in the state court.

27.     RAI also intends to file a petition for certiorari with the United States Supreme Court. The declaration that RAI seeks would be of assistance in connection with RAI's petition.

### COUNT I
### Declaration Regarding the Order of Dismissal in *AXA v. RAI*

28.     Plaintiff realleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

29.     The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction," a United States court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

30.     There is an actual controversy between RAI and AXA over the meaning of this Court's order of dismissal in *AXA v. RAI*. AXA contends that this Court dismissed AXA's case for lack of jurisdiction. RAI contends that the court did not dismiss for lack of jurisdiction but instead dismissed based on the parties' stipulation seeking dismissal with prejudice.

31.     Given the actual controversy between RAI and AXA, this Court should declare that its judgment in *AXA v. RAI* was not based on a lack of jurisdiction.

32.     The declaration that RAI seeks is proper because it would serve a useful purpose in clarifying or settling the legal issues involved and would finalize the controversy and offer

relief from uncertainty.

## PRAYER FOR RELIEF

Plaintiff respectfully prays for a declaration that this Court's judgment in *AXA Art Insurance Corp. v. Renaissance Art Investors, LLC*, No. 10 Civ. 5581 (S.D.N.Y. Nov. 29, 2010), which dismissed AXA's action "with prejudice," was based not on a lack of jurisdiction, but on the parties' stipulation, drafted by counsel for AXA, which expressly requested dismissal "with prejudice."

Respectfully submitted,

Barry I. Slotnick
Kristi A. Davidson
BUCHANAN INGERSOLL & ROONEY PC
1290 Avenue of the Americas, 30th Floor
New York, New York 10104
(212) 440-4400
barry.slotnick@bipc.com
kristi.davidson@bipc.com

*Of Counsel*:
Paul D. Clement
H. Christopher Bartolomucci
BANCROFT PLLC
1919 M Street N.W., Suite 470
Washington, D.C. 20036
(202) 234-0090
pclement@bancroftpllc.com
cbartolomucci@bancroftpllc.com

Dated: June ___, 2013

*Counsel for Plaintiff*
*Renaissance Art Investors, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
RENAISSANCE ART INVESTORS, LLC,

                                          Docket No. 13-cv-4452 (PAC) (HBP)

                        Plaintiff,
      - against -

AXA ART INSURANCE CORPORATION,

                        Defendant.
--------------------------------------------------------X

COUNSEL:

       PLEASE TAKE NOTICE, that upon the annexed Affirmation of Dennis M. Wade, the exhibits annexed thereto, and Memorandum of Law, and all the proceedings and pleadings heretofore had herein, defendant AXA ART INSURANCE CORPORATION will move this court at the United States District Court for the Southern District of New York, before the Honorable J. Paul A. Crotty, at the courthouse located at 500 Pearl Street, New York, New York, on a date to be provided by the Court for an order pursuant to Rules 12(b)(1); 12(b)(6), or in the alternative, Rule 12(d) and Rule 56 of the Federal Rules of Civil Procedure: (1) dismissing this action with prejudice and (2) granting such other, further and different relief as this Court deems just and proper.

       PLEASE TAKE FURTHER NOTICE that answering papers, if any, must be served and filed by September 10, 2013 as prescribed by this Honorable Court.

       PLEASE TAKE FURTHER NOTICE that AXA ART INSURANCE CORPORATION requests oral argument.

Dated: New York, New York
      August 20, 2013

WADE CLARK MULCAHY

By: Dennis M. Wade, Esq.
Attorneys for *Defendant*
AXA Art Insurance Corporation
111 Broadway, 9th Floor
New York, New York 10006
(212) 267-1900
Our File No.: 80.5533.1MB

TO:    (See Certificate of Service)

K:\5533\legal\RAI SDNY Action\notice of motion.doc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
RENAISSANCE ART INVESTORS, LLC,

                                               Docket No. 13-cv-4452 (PAC) (HBP)

                      Plaintiff,
     - against -

AXA ART INSURANCE CORPORATION,

                      Defendant.
----------------------------------------------------------X

       Dennis M. Wade, an attorney duly admitted to practice law in the United States District Court, Southern District of New York and the Courts of the State of New York, hereby affirms under penalty of perjury:

       1.     I am a partner with the law firm of Wade Clark Mulcahy, attorneys for defendant AXA ART INSURANCE CORPORATION ("AXA").  I submit this affirmation in support of AXA's motion to dismiss RENAISSANCE ART INVESTORS, LLC's ("RAI") action with prejudice.  I am familiar with the facts and circumstances surrounding this action.

*The First Federal Action*

       2.     On July 22, 2010, AXA brought a declaratory judgment action in United States District Court, Southern District of New York, captioned *AXA Art Ins. Corp. v. Renaissance Art Investors, LLC*, under docket no. 10-cv-5581 (PAC) (the "Federal Action").  Attached as **Exhibit A** is a true and accurate copy of AXA's complaint.  The Federal Action was assigned to Your Honor.

       3.     AXA filed the Federal Action because AXA's policy did not cover fraud committed by the insured and its partners.

4.    Rather than responding to the complaint or advising AXA's attorneys that a member of the Nevada LLC was a New York resident, RAI requested three extensions of time to answer until October 22, 2010.

5.    During this period, RAI commenced an action in Nevada District Court, Clark County captioned *Renaissance Art Investors, LLC v. AXA Art Ins. Corp.* under case number A-10-627265-C.

6.    When RAI's response was due to AXA's complaint, on October 15, 2010, RAI's attorneys reported for the first time that RAI would move to dismiss the Federal Action for want of diversity of citizenship, sending a letter to Your Honor requesting a pre-motion conference. Attached as **Exhibit B** is a true and accurate copy of RAI's letter to Your Honor.

7.    Upon learning of the diversity issues, AXA asked RAI for proof of the citizenship of RAI's members to avoid burdening this Court with unnecessary motion practice and from conducting a pre-motion conference on the issue.

8.    On October 22, 2010, after learning that diversity was in question, AXA filed an action in New York State Supreme Court, New York County, captioned *AXA Art Ins. Corp. v. Renaissance Art Investors, LLC*, under index number 651844/2010 ("State Action").  Attached as **Exhibit C** is a true and accurate copy of AXA's complaint in the State Action.

9.    On November 8, 2010, RAI furnished documents to AXA in support of its claim that the federal court lacked subject matter jurisdiction due to the New York residence of one of RAI's members.  With proof of citizenship, AXA agreed to discontinue the Federal Action in lieu of appearing before this Court for a pre-motion conference.

10.    Well after the State Action had been commenced -- and without ever appearing before Your Honor -- the parties entered into a stipulation of discontinuance of the Federal

2

Action, dated November 29, 2010, with the explicit understanding that the discontinuance was done because the federal court had no jurisdiction. Attached as **Exhibit D** are true and accurate copies of the email correspondence between the attorneys for AXA and RAI. Attached as **Exhibit E** is a true and accurate copy of the stipulation of discontinuance.

11. The parties did not intend the discontinuance of the Federal Action to be on the merits as evidenced by the fact that RAI commenced its own action in Nevada state court in which it sought insurance coverage for the theft, and that AXA had commenced the State Action.

12. In fact, at the time of the discontinuance of the Federal Action, RAI's attorneys specifically represented that RAI's action in Nevada would proceed after the Federal Action was discontinued.

**The Litigation of the State Action**

13. After AXA commenced the State Action, RAI moved to dismiss AXA's complaint. Attached as **Exhibit F** is a true and accurate copy of the pertinent portion of RAI's memorandum of law in support of its motion to dismiss. RAI argued that the State Action was barred by the doctrine of *res judicata* because the parties' stipulation of discontinuance of the Federal Action contained the phrase "with prejudice."

14. AXA opposed RAI's motion to dismiss because the doctrine of *res judicata* does not apply where the Federal Action was never adjudicated on the merits.

15. AXA cross-moved for summary judgment on the grounds that AXA properly denied coverage for RAI's loss because the terms of the insurance policies were clear and unambiguous and the relevant facts were not in dispute.

16.     On June 13, 2011, the parties appeared before Judge Fried in state court for oral argument on the two motions.   Attached as **Exhibit G** is a true and accurate copy of the transcript of the argument before Judge Fried.

17.     By order dated July 25, 2011, Judge Fried denied RAI's motion to dismiss and granted AXA's cross-motion for summary judgment.   Attached as **Exhibit H** is a true and accurate copy of Judge Fried's decision.

18.      After Judge Fried rendered his decision, RAI did not make a motion to renew or reargue the points it made in its motion to dismiss.

## RAI's Appeal to the Appellate Division, First Department

19.     RAI appealed Judge Fried's decision to the Appellate Division, First Department. Attached as **Exhibit I** is a true and accurate copy of the pertinent portion of RAI's reply brief.

20.     By decision and order dated January 29, 2013, the Appellate Division, First Department, unanimously affirmed the trial court's order.   Attached as **Exhibit J** is a true and accurate copy of the Appellate Division's decision.

21.     RAI did not make a motion to renew or reargue the points it made in its appeal.

## The Decision of the Court Appeals

22.     RAI then made a motion to the Court of Appeals for leave to appeal the Appellate Division's decision.

23.     On May 7, 2013, the Court of Appeals issued a decision which denied RAI's motion and imposed costs.   Attached as **Exhibit K** is a true and accurate copy of the Court of Appeals' decision.

## The Instant Action

24.    On June 27, 2013, RAI commenced this action.  Attached as **Exhibit L** is a true and accurate copy of RAI's complaint.

25.    For the reasons set forth above and discussed in the accompanying Memorandum of Law, we respectfully request that this Court grant AXA's motion to dismiss.

Dated: New York, New York
        August 20, 2013

WADE CLARK MULCAHY


By: Dennis M. Wade, Esq. (DMW 4338)
Attorneys for Defendant
AXA Art Insurance Corporation
111 Broadway, 9th Floor
New York, New York 10006
(212) 267-1900
Our File No.: 80.5533.1MB

5

WADE CLARK MULCAHY
Dennis M. Wade (DMW-4338)
Michael A. Bono (MB-4776)
111 Broadway
New York, NY  10006   **JUDGE CROTTY**
(212) 267-1900
Attorneys for Plaintiff
AXA Art Insurance Corporation


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

AXA ART INSURANCE CORPORATION,

                              Plaintiff,

   - against -

RENAISSANCE ART INVESTORS, LLC,

                              Defendant.
-------------------------------------------------------------------X

# 10 CIV 5581

Civil Action No.

**COMPLAINT**

Plaintiff, AXA ART INSURANCE CORPORATION (hereinafter "AXA"), by its attorneys, WADE CLARK MULCAHY, as and for its complaint against Defendant RENAISSANCE ART INVESTORS, LLC (hereinafter "RAI"), upon information and belief, alleges as follows:

## NATURE OF ACTION

1.    Defendant RAI was one of the many victims of the infamous art fraudster, Lawrence B. Salander.  Salander needed financing to fuel his alleged goal to corner the Renaissance art market.  Perceiving a potential opportunity in a then booming art market, investors formed RAI in order to partner with Salander and his gallery, the Salander-O'Reilly Galleries.  RAI entered into a series of transactions with Salander, in a quest to become the owner of one of the largest Renaissance art collections in the world.  Salander, as "exclusive

consignee," was entrusted with the artwork and was supposed to use his many contacts and resources in the art world to find buyers on RAI's behalf. But instead, as RAI publicly acknowledges, Salander instead fraudulently swindled millions of dollars from RAI.

2.     After discovering Salander's fraud, RAI submitted an insurance claim to its insurer, Plaintiff AXA. But this claim, brought about because of a failed investment scheme, was not covered by AXA's policies, and indeed, such a claimed loss was specifically excluded from coverage because of Salander's fraudulent acts. As such, AXA timely and properly denied RAI's claim.

3.     AXA now files this action, seeking a judicial declaration that AXA has no duty to indemnify RAI or any other party for RAI's claimed loss.

### PARTIES JURISDICTION AND VENUE

4.     Plaintiff, an insurer of fine art, is incorporated in the State of New York with its principal place of business in New York, New York and is a citizen of the State of New York for purposes of diversity jurisdiction.

5.     Defendant, upon information and belief, is a company that was formed as an investment vehicle with the express purpose of partnering with Salander to buy and sell artwork for profit.

6.     Defendant was formed under the laws of the State of Nevada with a principal place of business in the State of Nevada and is a citizen of the State of Nevada for purposes of diversity jurisdiction.

7.     On information and belief, RAI has an office in the State of New York, transacts business in the State of New York, and is otherwise subject to personal jurisdiction in the New York courts in this matter.

8.     This is a declaratory judgment action brought pursuant to Federal Rules of Civil Procedure Rule 57 and 28 U.S.C. § 2201 and § 2202 for a declaration of rights of the parties under policies of insurance issued by AXA.

9.     Subject matter jurisdiction is based upon 28 U.S.C. § 2201 and diversity of citizenship under 28 U.S.C. § 1332.  The amount in controversy exceeds the sum of $75,000.

10.     Venue is proper under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1332(c), as the relevant policy was issued to RAI in New York, New York and that RAI's claimed loss occurred in New York, New York.

11.     An actual controversy exists between the parties regarding their respective rights and obligations under the relevant policies of insurance issued by plaintiff AXA to the defendant.

**FACTS**

12.     AXA issued commercial inland marine insurance policies to RAI under policy No.: 01-334-31-06-00026 (hereinafter the "Policies").  True and complete copies of the Policies are respectively attached hereto as Exhibit "A" & "B."

13.     The Policies were in effect from April 14, 2006, until October 23, 2007.

14.     Larry Salander was a world-renowned art dealer, and an owner of the Salander O'Reilly Galleries, cited by the Robb Report as "the best gallery in the world."

15.     On April 14, 2006, RAI entered into a series of transactions with Salander, Salander-O'Reilly Galleries, and L. Salander LLC, (collectively hereinafter "Salander") in which RAI believed it obtained the right, title, and interest in certain works of Renaissance art ("the Art").

16.     In connection with the above-described transactions, RAI and Salander entered into a "Consignment Agreement," in which Salander was to act as the "exclusive consignee" for the Art, and was provided with the authority to sell the Art on RAI's behalf.

17.     The Consignment Agreement also entrusted Salander to "receive, hold, protect and care for" the Art.

18.     In 2007, it was revealed that Salander was engaged in a comprehensive, fraudulent scheme, involving not only RAI, but dozens of other investors and art consignors. Upon discovery of the fraud, Salander and his gallery were inundated with a cascade of lawsuits, leading to a spectacular and very public collapse.   Ultimately, Salander and his gallery were forced into bankruptcy.   Moreover, public outcry resulted in a New York County grand jury investigation, which led to the prosecution and conviction of Salander upon his pleas of guilt.

**RAI's Action Against Salander**

19.     One of the many lawsuits filed against Salander was brought by RAI, styled *Renaissance Art Investors, LLC et al. v. Salander-O'Reilly Galleries, L. Salander LLC and Lawrence B. Salander,* venued in New York Supreme Court, New York County, under index number 406611/2007. RAI's complaint is attached as Exhibit "C".

20.     In its complaint, RAI alleges, *inter alia,* that Salander swindled RAI out of millions of dollars by secretly selling or otherwise disposing of the Art and then failing to remit any of the proceeds to RAI.

21.     RAI further alleges that Salander "entered into a Consignment Agreement pursuant to which [the defendants] agreed, among other things, (i) to act as the exclusive consignee of [RAI]; (ii) to perform services required to effectuate the sale of the artwork. . ." *See* Exhibit "C" at ¶ 13.

4

22.     RAI further alleges that as part of the Consignment Agreement, Salander agreed to use their best efforts to receive, hold, protect and care for the works of art. *See* Exhibit "C" at ¶ 16.

23.     RAI alleges that Salander engaged in "fraud" and "dishonest conduct" in selling the Art without remitting the proceeds to RAI. *See id.* at ¶¶ 20-26.

24.     RAI alleges the following specific acts of fraud:

- Salander lied to RAI by stating that missing artworks were in the possession of other auction houses when in fact they had secretly sold the works and failed to deposit the proceeds into RAI's account (*see* Exhibit "C" at ¶ 21);

- Salander proposed to transfer to RAI additional pieces of art in exchange for art that had been sold when in fact the additional pieces were already owned by RAI (*see id.* at ¶ 22);

- Salander auctioned pieces of art at Sotheby's on June 8, 2007 without notifying RAI and without remitting the proceeds to RAI (*see id.* at ¶ 23);

- Salander sold at least 59 pieces of art but did not compensate RAI (*see id.* at ¶ 25);

- Salander disposed of at least 147 pieces of art which were allegedly exchanged for other pieces of art in RAI's portfolio but did not inform RAI of these exchanges and later returned many of the pieces to other parties to satisfy Salander's unrelated debt (*see id.* at ¶ 26);

- Salander willfully disregarded RAI's instructions and violated multiple court orders by disposing of RAI's art pieces after September 17, 2007 despite being placed on notice not to dispose of any further art pieces (*see id.* at ¶ 32); and

- Salander made knowingly false statements to RAI in order to divert RAI's money for himself (*see id.* at ¶¶ 38-39).

25.     RAI's first cause of action against Salander is for "Fraud." *See id.* at ¶¶ 34-41.

26.     RAI's third cause of action against Salander is for "Breach of Contract." *See id.* at ¶¶ 47-51.

27.    In its fifth cause of action, RAI alleges that RAI, the Salander-O'Reilly Gallery, Salander LLC and Salander "were partners and/or joint venturers with respect to the purchase of the works of art." *See id.* at ¶ 59.

28.    On November 7, 2007, the RAI lawsuit against Salander was stayed by the Honorable Richard Lowe based on the pending bankruptcy proceedings.

**Salander Criminal Prosecution**

29.    In March of 2009, Larry Salander was indicted by a New York County grand jury. A year after his arrest, on March 18, 2010, Salander, on behalf of both himself and the Salander-O'Reilly Galleries, pleaded guilty to 29 felony counts of Grand Larceny and one count of Scheme to Defraud in the First Degree.  A transcript of the minutes of Salander's plea allocution is attached as Exhibit "D."

30.    During his allocution, Salander admitted that he defrauded his investors in a variety of ways, including, *inter alia,* misrepresenting the galleries' ownership interest in certain artwork; failing to inform investors that art was sold; and failing to pay the proceeds of sold art to the investors (Exhibit "D," p. 14).

31.    Salander further admitted that he defrauded consignors by, *inter alia,* denying them information about the status of sales; disposing of their works in an unauthorized manner; using their works to satisfy Salander's debts; and directing that the consignors not be paid upon completion of a sale (Exhibit "D," p.16-17).

32.    In pleading guilty to the specific counts of the indictment, including two separate counts involving RAI, Salander admitted he stole property from RAI valued at approximately $45 million and $3.6 million (Exhibit "D," p. 20-21).

### THE INSURANCE CLAIM

33.     On or about January 8, 2008, RAI notified AXA of a loss involving artworks valued at $42,197,660.00 which RAI "consigned to Salander-O'Reilly Galleries, LLC." The letter notifying AXA of the claim is attached as Exhibit "E."

34.     The Policies provide at Corporate Fine Art Coverage, Section A. Coverage:

> 1.  Covered Property
>
>     We will pay for "loss" to property consisting of Objects of Art of every nature and description appearing in the schedule.
>
> * * *
>
> 4.  Covered Causes of Loss
>
>     We will pay for direct physical "loss" to Covered Property unless the "loss" is excluded in Section B - Exclusions.

35.     The Policies contain the following definition at Corporate Fine Art Coverage, Section F. Definitions:

> "Loss" means accidental loss or damage.

36.     The Policies provide at Corporate Fine Art Coverage, Section B. Exclusions:

> 1.  We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any cause or event:
>
> * * *
>
> 3.  Any fraudulent, dishonest, or criminal act or acts by:
>
>     (a)  You, anyone else with an interest in the property or your or their employees whether or not committed alone or in collusion with others, whether or not such act or acts be committed during the hours of employment; or
>
>     (b)  Anyone entrusted with the Covered Property.

37.    The Policies provide at General Conditions:

A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This coverage is void in any case of fraud by you relating to it.  It is also void if you intentionally conceal or misrepresent material fact concerning:

1.  This coverage;
2.  The Covered Property; or
3.  Your interest in the Covered Property.

38.    The Policies provide at New York Endorsement – NEW YORK CHANGES - FRAUD:

The CONCEALMENT, MISREPRESENTATION OR FRAUD condition is replaced by the following:

FRAUD

We do not provide coverage for any insured ("insured") who has made fraudulent statements or engaged in fraudulent conduct in connection with any loss ("loss") or damage for which coverage is sought under this policy.

39.    The Policies provide at General Conditions:

D. POLICY PERIOD

We cover "loss" commencing during the policy period shown in the Declarations.

40.    The initial policy provides at Commercial Inland Marine Policy Declarations:

Policy Period from:    4/14/2006

Policy Period to:        4/14/2007

41.    The second policy provides at Commercial Inland Marine Policy Declarations:

Policy Period from:    4/14/2007

Policy Period to:        4/14/2008

42.     AXA cancelled the second policy effective October 23, 2007 due to RAI's failure to comply with certain policy conditions.

43.     After conducting an investigation, and in consideration of the above policy terms and conditions, AXA timely denied RAI's claim.  The denial letter is attached as Exhibit "F."

44.     AXA now brings this action, seeking a declaration from this Court to support AXA's denial of coverage.

**COUNT I – THERE IS NO COVERAGE UNDER THE POLICIES
BECAUSE THERE HAS NOT BEEN AN ACCIDENTAL
LOSS TO "COVERED PROPERTY"**

45.     Plaintiff repeats and reiterates each and every allegation heretofore made in this complaint in paragraphs designated "1" through "44" inclusive, with the same force and effect as if set forth herein.

46.     As set forth in further detail above, the Policies insure "direct physical 'loss' to Covered Property;" "Loss" is defined in the Policies as accidental loss or damage; and Covered Property consists of "Objects of Art."

47.     As part of its investment venture with Salander, RAI voluntarily entered into a series of agreements with Salander in an effort to obtain the Art and to sell the Art at a profit.

48.     The failure by Salander to provide RAI with the Art or to remit any sales proceeds of the Art to RAI constitutes a breach of contract.

49.     As such, RAI's alleged loss is not an accidental physical loss of the artwork, but a financial loss resulting from a breach of the contract by Salander.

50.     Accordingly, there is no coverage under the Policies for RAI's claim.

9

## COUNT II – THE CLAIM IS SPECIFICALLY EXCLUDED
## UNDER THE POLICIES' FRAUDULENT, DISHONEST,
## OR CRIMINAL ACT EXCLUSION

51.     Plaintiff repeats and reiterates each and every allegation heretofore made in this complaint in paragraphs designated "1" through "50" inclusive, with the same force and effect as if set forth herein.

52.     RAI's right to coverage under the Policies is subject to the policy exclusions including the Fraudulent, Dishonest, or Criminal Act Exclusion.

53.     The Fraudulent, Dishonest, or Criminal Act Exclusion bars coverage for fraudulent, dishonest, or criminal acts by anyone with an interest in the property or anyone entrusted with the covered property.

54.     RAI entrusted the Art to Salander pursuant to a consignment agreement.

55.     Pursuant to the terms of that consignment agreement, Salander was to receive, hold, protect, and care for the Art.

56.     Further, Salander and RAI were "partners and/or joint venturers" with respect to the Art.

57.     As set forth above, Salander committed many fraudulent, dishonest, and criminal acts that caused RAI's alleged loss.

58.     Indeed, in RAI's own words, the loss resulted from "fraud" and "dishonest conduct" on the part of the Salander.

59.     Accordingly, this loss is specifically excluded from coverage under the Policies.

## COUNT III – THERE IS NO COVERAGE PURSUANT
## TO THE POLICIES' FRAUD ENDORSEMENT

60.    Plaintiff repeats and reiterates each and every allegation heretofore made in this complaint in paragraphs designated "1" through "59" inclusive, with the same force and effect as if set forth herein.

61.    RAI's right to coverage under the Policies is subject to the policy conditions including the Fraud Endorsement.

62.    The Fraud Endorsement bars coverage for any insured that has engaged in fraudulent conduct in connection with any loss for which coverage is sought under the Policies.

63.    In this matter, in the event that Salander is found to be a partner of RAI and an insured, there is no coverage under the Policies pursuant to the Fraud Endorsement.

## COUNT IV – THERE IS NO COVERAGE UNDER
## THE POLICIES FOR ANY LOSS THAT COMMENCED
## OUTSIDE THE POLICY PERIODS

64.    Plaintiff repeats and reiterates each and every allegation heretofore made in this complaint in paragraphs designated "1" through "63" inclusive, with the same force and effect as if set forth herein.

65.    RAI's right to coverage under the Policies is subject to the policy conditions including General Condition D. "Policy Period".

66.    Pursuant to the Policies' General Conditions, the Policies only provides coverage for losses commencing during the policy periods which was April 14, 2006, through October 23, 2007.

67.    Thus, to the extent RAI's alleged loss commenced before April 14, 2006 or after October 23, 2007, there would be no coverage under the Policies.

**WHEREFORE,** AXA demands judgment as follows:

      a.    A declaration that AXA has no obligation to indemnify RAI or any other party with respect to RAI's claim related to the loss of artworks and/or money that arises out of the actions of Salander-O'Reilly Galleries, L. Salander LLC and/or Lawrence B. Salander;

      b.    Awarding AXA the costs of suit incurred herein, including reasonable attorneys' fees; and

      c.    Awarding AXA such other and further relief as this Court deems just and proper.

Dated: New York, New York
      July 21, 2010

                            WADE CLARK MULCAHY

                            By:    Dennis M. Wade, Esq. (DMW-4338)
                                     Michael A. Bono, Esq. (MB-4776)
                            *Attorneys* for Plaintiff
                            AXA Art Insurance Corp.
                            111 Broadway, 9th Floor
                            New York, New York 10006
                            (212) 267-1900
                            Our File No.:  80.5533.1

**Buchanan Ingersoll & Rooney** PC
Attorneys & Government Relations Professionals

620 Eighth Avenue, 23rd Floor
New York, NY 10018-1669

**Barry I. Slotnick**
212 440 4444
barry.slotnick@bipc.com

T 212 440 4400
F 212 440 4401
www.buchananingersoll.com

October 15, 2010

*VIA ELECTRONIC MAIL (CrottyNYSDChambers@nysd.uscourts.gov)*

The Honorable Paul A. Crotty, U.S.D.J.
Southern District of New York
500 Pearl Street, Chambers 735
New York, NY 10007

> Re:   **AXA Art Insurance Corp. v. Renaissance Art Investors, LLC**
>       **Case No. 10-civ-5581**
>       **Defendant's Request for a Pre-Motion Conference**

Dear Judge Crotty:

  We represent the Defendant, Renaissance Art Investors, LLC ("RAI") in the above-captioned action.  I write this letter to request a pre-motion conference on RAI's intended motion to dismiss the Complaint.  As summarized below, RAI intends to move to dismiss the complaint on the ground that the Court lacks subject matter jurisdiction.

  On July 22, 2010, Plaintiff, AXA Art Insurance Corporation ("AXA"), filed suit against Defendant, RAI, in the United States District Court for the Southern District of New York seeking declaratory judgment pursuant to 28 U.S.C. § 2201 (the "Declaratory Judgment Act"). In general, AXA's Complaint requests a declaration that the art RAI insured through AXA and subsequently lost is not covered under RAI's insurance policy with AXA.  Specifically, AXA seeks four declarations that: (1) there has been no accidental loss to property covered under RAI's insurance policy with AXA; (2) RAI's loss is specifically excluded from coverage; (3) there is no coverage under RAI's insurance policy with AXA pursuant to the policy's fraud endorsement; and (4) there is no coverage because the loss occurred outside the policy period.

  AXA's Complaint should be dismissed because this Court lacks subject matter jurisdiction over the claims asserted.  In the Complaint, AXA alleges that "[s]ubject matter jurisdiction is based upon 28 U.S.C. § 2201 and diversity of citizenship under 28 U.S.C. § 1332." (Cmplt. ¶ 9.)  AXA's jurisdictional allegation is doubly flawed.  First, complete diversity of citizenship was not properly alleged and, in any event, is lacking between the parties.  Second, the Declaratory Judgment Act does not, by itself, confer subject matter jurisdiction upon district courts.  Thus, if there is no diversity jurisdiction (and there is not in this case), the Declaratory Judgment Act cannot confer subject matter jurisdiction on the Court.

October 15, 2010
Page - 2 -

**Diversity Does Not Exist Between AXA and RAI**

AXA alleges that it is "incorporated in the State of New York with its principal place of business in New York, New York and is a citizen of the State of New York for purposes of diversity jurisdiction." (Cmplt. ¶ 4.) AXA further alleges that RAI "was formed under the laws of the State of Nevada with a principal place of business in the State of Nevada and is a citizen of the State of Nevada for purposes of diversity jurisdiction." (Cmplt. ¶ 6.) AXA's allegation regarding RAI's citizenship is incorrect because RAI is a limited liability company ("LLC").

An LLC's citizenship is determined by the citizenship of each member of the LLC rather than by the state under which the LLC is organized. "Unlike corporations, the citizenship of an unincorporated association depends on the citizenship of all the individual members of the partnership." *Discovery Ortho Partners, LLC v. Osseous Technologies of America, Inc.*, Case No. 10 CV 1729 (HB), 2010 WL 3239428, *3 (Aug. 17, 2010 S.D.N.Y.) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990)). "Thus for diversity jurisdiction to exist, the citizenship of each member or partner of an LLC must be different from the citizenship of each opposing party." *Id.* AXA failed to make any allegations regarding the citizenship of RAI's members. This failure is fatal to AXA's jurisdictional allegations because AXA did not set forth facts demonstrating that the court has subject matter jurisdiction based on diversity of citizenship. Without any allegations regarding the citizenship of the members of RAI, the Court is unable to determine from the face of the pleading whether diversity exists between AXA and RAI's members.

Nor can AXA amend its Complaint to properly allege diversity. Although not addressed in AXA's Complaint, at least one member of RAI is a citizen of New York. *See* Declaration of Donald Schupak, a true and correct copy of which is enclosed with this letter. As a result, AXA shares New York citizenship with at least one member of RAI. Therefore, diversity jurisdiction does not exist between AXA and RAI.

**The Declaratory Judgment Act Cannot Confer Subject Matter Jurisdiction On Its Own**

AXA's other alleged ground for subject matter jurisdiction is the fact that it is seeking relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Presumably, AXA believes that because the Declaratory Judgment Act is a federal statute, it necessarily confers subject matter jurisdiction on the district courts. This is incorrect.

The Declaratory Judgment Act states that it only creates a remedy in the district courts "[i]n a case of actual controversy *within its jurisdiction*." 28 U.S.C. § 2201(a) (emphasis added). Federal courts interpreting the Declaratory Judgment Act have made clear that the Act, without more, cannot confer subject matter jurisdiction on a district court to hear a declaratory judgment action. "The Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts... rather, there must be an independent basis of jurisdiction before a district court may issue a declaratory judgment." *International Union of Painters and Allied Trades,*

October 15, 2010
Page - 3 -

*AFL-CIO v. Local 8A-28A*, Case No. 09-CV-04358, 2010 WL 3780366, *7 (Sept. 21, 2010 E.D.N.Y.) (citing *Correspondent Services Corp. v. First Equities Corp. of Florida*, 442 F.3d 767, 769 (2d Cir. 2006)).

## Conclusion

The Court lacks diversity jurisdiction and the Declaratory Judgment Act cannot confer subject matter jurisdiction on the Court where it is otherwise lacking. These are the only two bases for subject matter jurisdiction AXA alleged in its Complaint. Accordingly, AXA's complaint should be dismissed for lack of subject matter jurisdiction.

Very truly yours,

Barry I. Slotnick

Enclosure

cc:    Michael Bono, Esquire (Mbono@wcmlaw.com), Counsel for Plaintiff

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------x

AXA ART INSURANCE CORPORATION,

                                Plaintiff,

       - against -

RENAISSANCE ART INVESTORS, LLC,

                            Defendant.

------------------------------------------------------------------x

Index No. _____

***Summons***

Plaintiff designates New York
County as the place of trial

The basis of venue is:
Plaintiff's Residence at
4 West 58th Street
New York, New York

      **YOU ARE HEREBY SUMMONED AND REQUIRED** to answer the complaint of

the plaintiff, a copy of which is hereby served upon you, and to serve copies of your answer

on the undersigned attorneys for the plaintiff, within twenty (20) days after the service of this

summons and complaint, exclusive of the day of service or within thirty (30) days after

service is complete if service is made by any method other than personal service to you

within the State of New York, exclusive of the day of service.

      In case of your failure to answer the complaint of the plaintiff, judgment will be taken

against you by default for the relief demanded in the complaint.

Dated: New York, New York
       October 22, 2010

                            WADE CLARK MULCAHY

                            Dennis M. Wade, Esq.
                            Michael A. Bono, Esq.
                            *Attorneys* for Plaintiff
                            AXA Art Insurance Corp.
                            111 Broadway, 9th Floor
                            New York, New York 10006
                            (212) 267-1900
                            Our File No.: 80.5533.1MB



To:    Renaissance Art Investors, LLC
        c/o United Corporate Services, Inc.
        202 South Minnesota Street
        Carson City, Nevada 89703

cc:    Barry I. Slotnick, Esq.
        Buchanan Ingersoll & Rooney PC
        620 Eighth Avenue, 23rd Floor
        New York, New York 10018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x
AXA ART INSURANCE CORPORATION,                    Index No. _____

                                Plaintiff,        *Complaint*

          - against -

RENAISSANCE ART INVESTORS, LLC,

                                Defendant.
------------------------------------------------------------------x

Plaintiff, AXA ART INSURANCE CORPORATION (hereinafter "AXA"), by its attorneys, WADE CLARK MULCAHY, as and for its complaint against Defendant RENAISSANCE ART INVESTORS, LLC (hereinafter "RAI"), upon information and belief, alleges as follows:

### NATURE OF ACTION

1.      Defendant RAI was one of the many victims of the infamous art fraudster, Lawrence B. Salander.  Salander needed financing to fuel his alleged goal to corner the Renaissance art market.  Perceiving a potential opportunity in a then booming art market, investors formed RAI in order to partner with Salander and his gallery, the Salander-O'Reilly Galleries.  RAI entered into a series of transactions with Salander, in a quest to become the owner of one of the largest Renaissance art collections in the world.  Salander, as "exclusive consignee," was entrusted with the artwork and was supposed to use his many contacts and resources in the art world to find buyers on RAI's behalf.  But instead, as RAI publicly acknowledges, Salander instead fraudulently swindled millions of dollars from RAI.

2.      After discovering Salander's fraud, RAI submitted an insurance claim to its insurer, Plaintiff AXA.  But this claim, brought about because of a failed investment scheme, was not covered by AXA's policies, and indeed, such a claimed loss was specifically

excluded from coverage because of Salander's fraudulent acts. As such, AXA timely and properly denied RAI's claim.

3.      AXA now files this action, seeking a judicial declaration that AXA has no duty to indemnify RAI or any other party for RAI's claimed loss.

### PARTIES JURISDICTION AND VENUE

4.      Plaintiff, an insurer of fine art, is incorporated in the State of New York with its principal place of business in New York, New York, regularly transacts business within the State of New York and is a citizen of the State of New York.

5.      Defendant, upon information and belief, is a company that was formed as an investment vehicle with the express purpose of partnering with Salander to buy and sell artwork for profit.

6.      On information and belief, RAI has an office in the State of New York, transacts business in the State of New York, and is otherwise subject to personal jurisdiction in the New York courts in this matter.

7.      Venue is properly placed in the Supreme Court of the State of New York, New York County, pursuant to CPLR §503(a) and §503(c), as Plaintiff is a New York corporation with its principal office in New York, New York.

8.      An actual controversy exists between the parties regarding their respective rights and obligations under the relevant policies of insurance issued by plaintiff AXA to the defendant.

### FACTS

9.      AXA issued commercial inland marine insurance policies to RAI under policy No.: 01-334-31-06-00026 (hereinafter the "Policies"). True and complete copies of the Policies are respectively attached hereto as *Exhibit "A" & "B."*

10.     The Policies were in effect from April 14, 2006, until October 23, 2007.

11.     Larry Salander was a world-renowned art dealer, and an owner of the Salander O'Reilly Galleries, cited by the Robb Report as "the best gallery in the world."

12.     On April 14, 2006, RAI entered into a series of transactions with Salander, Salander-O'Reilly Galleries, and L. Salander LLC, (collectively hereinafter "Salander") in which RAI believed it obtained the right, title, and interest in certain works of Renaissance art ("the Art").

13.     In connection with the above-described transactions, RAI and Salander entered into a "Consignment Agreement," in which Salander was to act as the "exclusive consignee" for the Art, and was provided with the authority to sell the Art on RAI's behalf.

14.     The Consignment Agreement also entrusted Salander to "receive, hold, protect and care for" the Art.

15.     In 2007, it was revealed that Salander was engaged in a comprehensive, fraudulent scheme, involving not only RAI, but dozens of other investors and art consignors. Upon discovery of the fraud, Salander and his gallery were inundated with a cascade of lawsuits, leading to a spectacular and very public collapse. Ultimately, Salander and his gallery were forced into bankruptcy. Moreover, public outcry resulted in a New York County grand jury investigation, which led to the prosecution and conviction of Salander upon his pleas of guilt.

### *RAI's Action Against Salander*

16.     One of the many lawsuits filed against Salander was brought by RAI, styled *Renaissance Art Investors, LLC et al. v. Salander-O'Reilly Galleries, L. Salander LLC and Lawrence B. Salander,* venued in New York Supreme Court, New York County, under index number 406611/2007. RAI's complaint is attached as *Exhibit "C"*.

17.    In its complaint, RAI alleges, *inter alia,* that Salander swindled RAI out of millions of dollars by secretly selling or otherwise disposing of the Art and then failing to remit any of the proceeds to RAI.

18.    RAI further alleges that Salander "entered into a Consignment Agreement pursuant to which [the defendants] agreed, among other things, (i) to act as the exclusive consignee of [RAI]; (ii) to perform services required to effectuate the sale of the artwork. . ." *See* Exhibit "C" at ¶ 13.

19.    RAI further alleges that as part of the Consignment Agreement, Salander agreed to use their best efforts to receive, hold, protect and care for the works of art. *See* Exhibit "C" at ¶ 16.

20.    RAI alleges that Salander engaged in "fraud" and "dishonest conduct" in selling the Art without remitting the proceeds to RAI. *See id.* at ¶¶ 20-26.

21.    RAI alleges the following specific acts of fraud:

- Salander lied to RAI by stating that missing artworks were in the possession of other auction houses when in fact they had secretly sold the works and failed to deposit the proceeds into RAI's account (*see* Exhibit "C" at ¶ 21);

- Salander proposed to transfer to RAI additional pieces of art in exchange for art that had been sold when in fact the additional pieces were already owned by RAI (*see id.* at ¶ 22);

- Salander auctioned pieces of art at Sotheby's on June 8, 2007 without notifying RAI and without remitting the proceeds to RAI (*see id.* at ¶ 23);

- Salander sold at least 59 pieces of art but did not compensate RAI (*see id.* at ¶ 25);

- Salander disposed of at least 147 pieces of art which were allegedly exchanged for other pieces of art in RAI's portfolio but did not inform RAI of these exchanges and later returned many of the pieces to other parties to satisfy Salander's unrelated debt (*see id.* at ¶ 26);

- Salander willfully disregarded RAI's instructions and violated multiple court orders by disposing of RAI's art pieces after September 17, 2007 despite being placed on notice not to dispose of any further art pieces (*see id.* at ¶ 32); and

- Salander made knowingly false statements to RAI in order to divert RAI's money for himself (*see id.* at ¶¶ 38-39).

22.    RAI's first cause of action against Salander is for "Fraud." *See id.* at ¶¶ 34-41.

23.    RAI's third cause of action against Salander is for "Breach of Contract." *See id.* at ¶¶ 47-51.

24.    In its fifth cause of action, RAI alleges that RAI, the Salander-O'Reilly Gallery, Salander LLC and Salander "were partners and/or joint venturers with respect to the purchase of the works of art." *See id.* at ¶ 59.

25.    On November 7, 2007, the RAI lawsuit against Salander was stayed by the Honorable Richard Lowe based on the pending bankruptcy proceedings.

***Salander Criminal Prosecution***

26.    In March of 2009, Larry Salander was indicted by a New York County grand jury. A year after his arrest, on March 18, 2010, Salander, on behalf of both himself and the Salander- O'Reilly Galleries, pleaded guilty to 29 felony counts of Grand Larceny and one count of Scheme to Defraud in the First Degree. A transcript of the minutes of Salander's plea allocution is attached as *Exhibit "D."*

27.    During his allocution, Salander admitted that he defrauded his investors in a variety of ways, including, *inter alia,* misrepresenting the galleries' ownership interest in certain artwork; failing to inform investors that art was sold; and failing to pay the proceeds of sold art to the investors (Exhibit "D," p. 14).

28.    Salander further admitted that he defrauded consignors by, *inter alia,* denying them information about the status of sales; disposing of their works in an unauthorized manner; using their works to satisfy Salander's debts; and directing that the consignors not be paid upon completion of a sale (Exhibit "D," p.16-17).

29.     In pleading guilty to the specific counts of the indictment, including two separate counts involving RAI, Salander admitted he stole property from RAI valued at approximately $45 million and $3.6 million (Exhibit "D," p. 20-21).

### THE INSURANCE CLAIM

30.     On or about January 8, 2008, RAI notified AXA of a loss involving artworks valued at $42,197,660.00 which RAI "consigned to Salander-O'Reilly Galleries, LLC." The letter notifying AXA of the claim is attached as *Exhibit "E."*

31.     The Policies provide at Corporate Fine Art Coverage, Section A. Coverage:

> 1. Covered Property
>
> We will pay for "loss" to property consisting of Objects of Art of every nature and description appearing in the schedule.
>
> * * *
>
> 4. Covered Causes of Loss
>
> We will pay for direct physical "loss" to Covered Property unless the "loss" is excluded in Section B - Exclusions.

32.     The Policies contain the following definition at Corporate Fine Art Coverage, Section F. Definitions:

> "Loss" means accidental loss or damage.

33.     The Policies provide at Corporate Fine Art Coverage, Section B. Exclusions:

> 1. We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any cause or event:
>
> * * *

3.  Any fraudulent, dishonest, or criminal act or acts by:

    (a)    You, anyone else with an interest in the property or your or their employees whether or not committed alone or in collusion with others, whether or not such act or acts be committed during the hours of employment; or

    (b)    Anyone entrusted with the Covered Property.

34.    The Policies provide at General Conditions:

A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This coverage is void in any case of fraud by you relating to it. It is also void if you intentionally conceal or misrepresent material fact concerning:

1.  This coverage;
2.  The Covered Property; or
3.  Your interest in the Covered Property.

35.    The Policies provide at New York Endorsement – NEW YORK CHANGES -

FRAUD:

The CONCEALMENT, MISREPRESENTATION OR FRAUD condition is replaced by the following:

FRAUD

We do not provide coverage for any insured ("insured") who has made fraudulent statements or engaged in fraudulent conduct in connection with any loss ("loss") or damage for which coverage is sought under this policy.

36.    The Policies provide at General Conditions:

D. POLICY PERIOD

We cover "loss" commencing during the policy period shown in the Declarations.

37.    The initial policy provides at Commercial Inland Marine Policy Declarations:

Policy Period from:    4/14/2006

Policy Period to:    4/14/2007

38.    The second policy provides at Commercial Inland Marine Policy Declarations:

Policy Period from:    4/14/2007

Policy Period to:    4/14/2008

39.    AXA cancelled the second policy effective October 23, 2007 due to RAI's failure to comply with certain policy conditions.

*40.*    After conducting an investigation, and in consideration of the above policy terms and conditions, AXA timely denied RAI's claim.  The denial letter is attached as *Exhibit "F."*

41.    AXA now brings this action, seeking a declaration from this Court to support AXA's denial of coverage.

### COUNT I – THERE IS NO COVERAGE UNDER THE POLICIES BECAUSE THERE HAS NOT BEEN AN ACCIDENTAL LOSS TO "COVERED PROPERTY"

42.    Plaintiff repeats and reiterates each and every allegation heretofore made in this complaint in paragraphs designated "1" through "41" inclusive, with the same force and effect as if set forth herein.

43.    As set forth in further detail above, the Policies insure "direct physical 'loss' to Covered Property;" "Loss" is defined in the Policies as accidental loss or damage; and Covered Property consists of "Objects of Art."

44.    As part of its investment venture with Salander, RAI voluntarily entered into a series of agreements with Salander in an effort to obtain the Art and to sell the Art at a profit.

45.    The failure by Salander to provide RAI with the Art or to remit any sales proceeds of the Art to RAI constitutes a breach of contract.

46.    As such, RAI's alleged loss is not an accidental physical loss of the artwork, but a financial loss resulting from a breach of the contract by Salander.

47.     Accordingly, there is no coverage under the Policies for RAI's claim.

### COUNT II – THE CLAIM IS SPECIFICALLY EXCLUDED UNDER THE POLICIES' FRAUDULENT, DISHONEST, OR CRIMINAL ACT EXCLUSION

48.     Plaintiff repeats and reiterates each and every allegation heretofore made in this complaint in paragraphs designated "1" through "47" inclusive, with the same force and effect as if set forth herein.

49.     RAI's right to coverage under the Policies is subject to the policy exclusions including the Fraudulent, Dishonest, or Criminal Act Exclusion.

50.     The Fraudulent, Dishonest, or Criminal Act Exclusion bars coverage for fraudulent, dishonest, or criminal acts by anyone with an interest in the property or anyone entrusted with the covered property.

51.     RAI entrusted the Art to Salander pursuant to a consignment agreement.

52.     Pursuant to the terms of that consignment agreement, Salander was to receive, hold, protect, and care for the Art.

53.     Further, Salander and RAI were "partners and/or joint venturers" with respect to the Art.

54.     As set forth above, Salander committed many fraudulent, dishonest, and criminal acts that caused RAI's alleged loss.

55.     Indeed, in RAI's own words, the loss resulted from "fraud" and "dishonest conduct" on the part of the Salander.

56.     Accordingly, this loss is specifically excluded from coverage under the Policies.

### COUNT III – THERE IS NO COVERAGE PURSUANT TO THE POLICIES' FRAUD ENDORSEMENT

57.     Plaintiff repeats and reiterates each and every allegation heretofore made in this complaint in paragraphs designated "1" through "56" inclusive, with the same force and effect as if set forth herein.

58.     RAI's right to coverage under the Policies is subject to the policy conditions including the Fraud Endorsement.

59.     The Fraud Endorsement bars coverage for any insured that has engaged in fraudulent conduct in connection with any loss for which coverage is sought under the Policies.

60.     In this matter, in the event that Salander is found to be a partner of RAI and an insured, there is no coverage under the Policies pursuant to the Fraud Endorsement.

### COUNT IV – THERE IS NO COVERAGE UNDER THE POLICIES FOR ANY LOSS THAT COMMENCED OUTSIDE THE POLICY PERIODS

61.     Plaintiff repeats and reiterates each and every allegation heretofore made in this complaint in paragraphs designated "1" through "60" inclusive, with the same force and effect as if set forth herein.

62.     RAI's right to coverage under the Policies is subject to the policy conditions including General Condition D. "Policy Period".

63.     Pursuant to the Policies' General Conditions, the Policies only provides coverage for losses commencing during the policy periods which was April 14, 2006, through October 23, 2007.

64.     Thus, to the extent RAI's alleged loss commenced before April 14, 2006 or after October 23, 2007, there would be no coverage under the Policies.

**WHEREFORE,** AXA demands judgment as follows:

     a.    A declaration that AXA has no obligation to indemnify RAI or any other party with respect to RAI's claim related to the loss of artworks and/or money that arises out of the actions of Salander-O'Reilly Galleries, L. Salander LLC and/or Lawrence B. Salander;

     b.    Awarding AXA the costs of suit incurred herein, including reasonable attorneys' fees; and

     c.    Awarding AXA such other and further relief as this Court deems just and proper.

Dated: New York, New York
       October 22, 2010

                                WADE CLARK MULCAHY

                                Dennis M. Wade, Esq.
                                Michael A. Bono, Esq.
                                *Attorneys* for Plaintiff
                                AXA Art Insurance Corp.
                                111 Broadway, 9th Floor
                                New York, New York 10006
                                (212) 267-1900
                                Our File No.:  80.5533.1MB

| | |
|---|---|
| **From:** | Davidson, Kristi [kristi.davidson@bipc.com] |
| **Sent:** | Monday, November 29, 2010 12:00 PM |
| **To:** | Michael Bono |
| **Cc:** | Slotnick, Barry; Tepper, H. Marc; Dennis M. Wade; Mendel Simon |
| **Subject:** | RE: AXA ART INSURANCE CORP v RENAISSANCE ART INVESTORS, LLC (29 Nov. 2010) a |

Mike:

This confirms that RAI has agreed, subject to the confidentiality agreement to be worked out between Nevada counsel, AXA may use in the Nevada action the following documents submitted to AXA in connection with the New York federal action:

1. Donald Schupak declaration dated October 14, 2010, with exhibit.
2. Redacted RAI Operating Agreement.
3. Donald Schupak supplemental declaration dated November 23, 2010, with exhibits.

I look forward to receipt of the stipulation of dismissal, and I ask that you conference me into the call with chambers.  Thanks.

Kristi

-----Original Message-----
From: Michael Bono [mailto:Mbono@wcmlaw.com]
Sent: Monday, November 29, 2010 11:53 AM
To: Davidson, Kristi
Cc: Slotnick, Barry; Tepper, H. Marc; Dennis M. Wade; Mendel Simon
Subject: RE: AXA ART INSURANCE CORP v RENAISSANCE ART INVESTORS, LLC (29 Nov. 2010)a

Kristi,

Further to our two discussions of earlier today, AXA is prepared to discontinue the action against RAI pending in the Southern District of New York.
In exchange, you have indicated that, subject to a confidentiality agreement, RAI agrees that the submissions made to Wade Clark Mulcahy and to the Court in connection with the diversity issues may be used in the Nevada litigation in the matter of RAI v. AXA, Case No.
A-10-627265-C.
Those submissions include the declaration of Donald Schupak, dated October 14, 2010, with Exhibit, and Supplemental Declaration of Donald Schupak dated November 23, 2010, along with the corresponding exhibits.

We also agreed that Nevada counsel for both AXA and RAI will work out the details of the above-mentioned confidentiality agreement.
Please confirm that this accurately represents our discussions and proposed agreement.  I will then file the stipulation of dismissal and contact the court to cancel today's appearance.

Thanks,
Mike
-----Original Message-----
From: Michael Bono
Sent: Monday, November 29, 2010 9:30 AM
To: 'Davidson, Kristi'
Cc: Slotnick, Barry; Tepper, H. Marc; Dennis M. Wade; Mendel Simon
Subject: RE: AXA ART INSURANCE CORP v RENAISSANCE ART INVESTORS, LLC (29 Nov. 2010)

Kristi,

Please call me at your earliest convenience to discuss in advance of the court appearance

this afternoon.

Thanks,
Mike

-----Original Message-----
From: Davidson, Kristi [mailto:kristi.davidson@bipc.com]
Sent: Friday, November 26, 2010 8:57 AM
To: Michael Bono
Cc: Slotnick, Barry; Tepper, H. Marc; Dennis M. Wade; Mendel Simon
Subject: RE: AXA ART INSURANCE CORP v RENAISSANCE ART INVESTORS, LLC (24 Nov. 2010)

Mike:

Resolution of the jurisdictional issue has already been delayed twice at your request.  We cannot agree to a third delay.  We provided information and documentation voluntarily and as soon as possible following your late request.  The issues are straight-forward, and the facts are clear.  We see no reason that you and your client cannot evaluate the materials quickly and be in a position to advise the Court accordingly on Monday.

Thank you, and I hope you had a great Thanksgiving.

Kristi

-----Original Message-----
From: Michael Bono [mailto:Mbono@wcmlaw.com]
Sent: Wed 11/24/2010 4:18 PM
To: Davidson, Kristi
Cc: Slotnick, Barry; Tepper, H. Marc; Dennis M. Wade; Mendel Simon
Subject: FW: AXA ART INSURANCE CORP v RENAISSANCE ART INVESTORS, LLC (24 Nov. 2010)

        Kristi,


        As you know, we received your submission on the eve of Thanksgiving.

        We will need to evaluate the materials and discuss this with our client, who will also need an opportunity to consider the issue.

        Because of the holiday (which includes Friday in this case), we cannot conduct the due diligence required or have the necessary discussions by your Friday deadline.


        We do not wish to burden Judge Crotty with needless argument.

        Under these circumstances, we suggest putting the conference over for a week or at the Judge's convenience.

        If we are satisfied by your submission, the conference may be moot.

        Please advise soonest so we can get word to the Court if we are going to move the conference.


        Thanks,

        Mike


        Michael A. Bono
        Partner

2

vcard <http://www.wcmlaw.com/getvcard.asp?ID=38>
bio <http://www.wcmlaw.com/showattorney.asp?Show=38>




        917 Mountain Avenue
Mountainside, NJ 07092
908 789 1681
908 789 0984 fax
map <http://www.wcmlaw.com/showlocation.asp?show=3>



            1515 Market St. ste. 2050
Philadelphia, PA 19102
267 239 5526
267 565 1236 fax
map <http://www.wcmlaw.com/showlocation.asp?show=4>




From: "Allon, Claudia" <claudia.allon@bipc.com>
To: "Dennis M. Wade" <dwade@wcmlaw.com>
Cc: "Davidson, Kristi" <kristi.davidson@bipc.com>, "Slotnick, Barry"
<barry.slotnick@bipc.com>, "dschupak@schupakgroup.com"
<dschupak@schupakgroup.com>, "Tepper, H. Marc" <marc.tepper@bipc.com>
Subject: AXA ART INSURANCE CORP v RENAISSANCE ART INVESTORS, LLC

Enclosed please find the attached as per the request of Kristi Davidson,
a shareholder in this office.

Thank you.


Claudia J. Allon
Administrator
Office of the Chairman, Barry I. Slotnick, Esq.
New York Litigation Group
Buchanan, Ingersoll & Rooney PC
New York Times Building
620 Eighth Avenue, 23rd Fl
New York, NY 10018
Tel: 212 440 4445 Fax: 212 440 4402

    TAX ADVICE DISCLAIMER: Any federal tax advice contained in this communication
(including attachments) was not intended or written to be used, and it cannot be used, by
you for the purpose of (1) avoiding any penalty that may be imposed by the Internal
Revenue Service or (2) promoting, marketing or recommending to another party any
transaction or matter addressed herein. If you would like such advice, please contact us.

    Above email is for intended recipient only and may be confidential and protected by
attorney/client privilege.
    If you are not the intended recipient, please advise the sender immediately.
    Unauthorized use or distribution is prohibited and may be unlawful.

TAX ADVICE DISCLAIMER: Any federal tax advice contained in this communication (including attachments) was not intended or written to be used, and it cannot be used, by you for the purpose of (1) avoiding any penalty that may be imposed by the Internal Revenue Service or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein. If you would like such advice, please contact us.

Above email is for intended recipient only and may be confidential and protected by attorney/client privilege.
If you are not the intended recipient, please advise the sender immediately.
Unauthorized use or distribution is prohibited and may be unlawful.

TAX ADVICE DISCLAIMER: Any federal tax advice contained in this communication (including attachments) was not intended or written to be used, and it cannot be used, by you for the purpose of (1) avoiding any penalty that may be imposed by the Internal Revenue Service or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein. If you would like such advice, please contact us.

Above email is for intended recipient only and may be confidential and protected by attorney/client privilege.
If you are not the intended recipient, please advise the sender immediately.
Unauthorized use or distribution is prohibited and may be unlawful.

Case 1:10-cv-05581-PAC    Document 25    Filed 10/29/10    Page 1 of 1


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  29 NOV 2010

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AXA ART INSURANCE CORPORATION,

                                    Plaintiff,            Civ. Action No. 10 CIV. 5581 (Crotty)
                                                                   +t Order
                    -against-                            **STIPULATION OF DISMISSAL**

RENAISSANCE ART INVESTORS, LLC,

                                    Defendant.

        IT IS HEREBY STIPULATED AND AGREED TO, by and between the undersigned,

the attorneys of record for all the parties to the above action, that whereas no party hereto is an

infant, incompetent person for whom a committee has been appointed or conservatec and no

person not a party has an interest in the subject matter of this action, pursuant to Fed. R. Civ.

Proc. 41(a)(1)(A)(ii), the above entitled action for declaratory judgment be, and the same hereby

is discontinued with prejudice and without costs to either party as against the other. The Clerk of
Court shall close this case.

Dated: New York, New York
November 29, 2010

WADE CLARK MULCAHY                          BUCHANAN INGERSOLL & ROONEY PC

_____                     _____
Michael A. Bono, Esq.                       Kristi A. Davidson, Esq.
111 Broadway, 9th Floor                     620 Eighth Avenue, 23rd Floor
New York, New York 10006                    New York, New York 10018
(212) 267-1900                              (212) 440-4562
*Attorneys for Plaintiff*                   *Attorneys for Defendant*
*AXA Art Insurance Corporation*             *Renaissance Art Investors, LLC*

SO ORDERED:    29 NOV 2010

_____
HON. PAUL A. CROTTY
UNITED STATES DISTRICT JUDGE

FILED: NEW YORK COUNTY CLERK 03/18/2011                    INDEX NO. 651844/2010

NYSCEF DOC. NO. 3    Case 1:13-cv-04452-PAC    Document 11-6    Filed 08/20/13    Page 1 of 3    RECEIVED NYSCEF: 03/18/2011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| AXA ART INSURANCE CORPORATION, a New York corporation,<br><br>        Plaintiff,<br><br>   vs.<br><br>RENAISSANCE ART INVESTORS, LLC, a Nevada limited liability company,<br><br>        Defendants. | **Index No. 651844/10** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S  FIRST AMENDED COMPLAINT**

BUCHANAN INGERSOLL & ROONEY PC
Barry I. Slotnick
Kristi A. Davidson

620 8th Ave., 23rd Floor
New York, NY  10018
Telephone: (212) 440-4400

*Attorneys for Plaintiff Renaissance Art
Investors, LLC*

## ARGUMENT

I.  **PURSUANT TO A STRAIGHT-FORWARD APPLICATION OF *RES JUDICATA* PRINCIPLES, AXA IS BARRED FROM CONTINUING ITS COVERAGE CLAIMS IN THIS COURT OR IN ANY OTHER COURT.**

Basic *res judicata* principles dictate that AXA's claims based upon the central allegation that RAI is not entitled under the Policies to coverage of its Loss cannot be litigated in this Court or in any other court. Consequently, AXA's Complaint and all causes of action asserted therein should be dismissed in their entirety.

New York courts have long held that a "dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action." *Samuels v. Northern Telecom, Inc.*, 942 F.2d 834, 836 (2d Cir. 1991) (internal citations omitted). This principle applies equally to stipulations and to orders of dismissal. *Id.* (case was dismissed by stipulation of the parties); *LaVigna v. Capital Cities/ABC, Inc.*, 245 A.D.2d 75, 76, 665 N.Y.S.2d 410, 411 (1st Dep't 1997) ("[A] stipulation of dismissal with prejudice in Federal Court is an adjudication on the merits for purposes of res judicata."); *Staten Investors Group v. Schaffer*, 147 A.D.2d 631, 631, 537 N.Y.S.2d 990, 990 (2d Dep't 1989) ("The plaintiff's first cause of action was previously asserted against the defendant in a Federal action which was terminated by the plaintiffs in the Federal action … upon the filing of a dismissal with prejudice in accordance with Federal Rules of Civil Procedure, Rule 41(a)(1). Consequently, the first cause of action was properly dismissed on the grounds of res judicata since the termination of the Federal action constituted a final disposition on the merits.").

The language of the stipulation and Order entered in the Federal Action dismissing AXA's claims for declaratory judgment **with prejudice** is plain, clear and unambiguous. AXA's Complaint in the instant action is entirely duplicative of its claims in the Federal Action and seeks precisely the same relief upon which final judgment already has been entered in favor of

8

RAI and against AXA.  The instant action cannot withstand even the most flexible of standards

for the application of *res judicata* and should be dismissed forthwith.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's First Amended

Complaint should be granted in its entirety.


Dated:  New York, New York
       March 18, 2011
                              BUCHANAN INGERSOLL & ROONEY PC


                            By: _____
                              Barry I. Slotnick
                              H. Marc Tepper
                              Kristi A. Davidson

                              620 8th Ave., 23rd Floor
                              New York, NY  10018
                              Telephone: (212) 440-4400

                              *Attorneys for Plaintiff Renaissance Art*
                              *Investors, LLC*

1

1

2     SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF NEW YORK : PART 60
3     ------------------------------------------X
      AXA ART INSURANCE CORPORATION,
4
                           Plaintiff(s),
5
              - against -
6

7     RENAISSANCE ART INVESTORS, IN.,

8
                           Defendant(s).
9     ------------------------------------------X
      Index No. 651844/10
10
                      June 13, 2011
11                    60 Centre Street
                      New York, New York
12

13    B E F O R E:      HONORABLE BERNARD J. FRIED, JSC

14

15    A P P E A R A N C E S:

16            WADE CLARK MULCAHY
                   Attorneys for Plaintiff(s)
17                 111 Broadway
                   New York, New York 10006
18                 BY: DENNIS M WADE, ESQ.
                       MICHAEL BONO, ESQ.
19

20            BUCHANAN INGERSOLL & ROONEY PC
                   Attorneys for Defendant(s)
21                 290 Avenue of Americas
                   New York, New York 10104
22                 BY:  BARRY I SLOTNICK, ESQ.
                       KRISTI A. DAVIDSON, ESQ.
23

24

25

26

            Rachel C. Simone, CSR, RMR, CRR

2

1                      Proceedings

2              THE COURT:  If I understand the motion, it is to

3      dismiss the complaint on the ground, one, that the

4      stipulation of discontinuance and the order signed by Judge

5      Crotty are with prejudice, and, therefore, this case cannot

6      go forward.  And there is a timeliness issue which I

7      wouldn't waste any time with.  Then there is a crossmotion

8      seeking summary judgment on the plain language of the

9      contracts.

10             Let's deal with the motion to dismiss first.

11             MR. SLOTNICK:  Most respectfully, your Honor,

12     this matter as it appears before this Court appeared before

13     Judge Crotty.

14             THE COURT:  When Judge Crotty had it there was

15     never an answer.  There was a pre-answer discovery issue,

16     was it jurisdiction?  A stipulation was prepared.  That

17     case was dismissed with prejudice after this action was

18     filed.

19             How can this be a dismissal on the merits when

20     the merits were never addressed by Judge Crotty?

21             MR. SLOTNICK:  Your Honor, the parties entered

22     into an agreement.

23             THE COURT:  That's an agreement between the

24     parties.  The question is whether the stipulation "with

25     prejudice" means what it means.  But how can it be a res

26     judicata issue based on an order of Judge Crotty when he

3

1                          Proceedings

2      never reached the merits?  I am correct about that?

3              MR. SLOTNICK:  Respectfully, your Honor, and I

4      say this respectfully, Judge Crotty never reached the

5      merits.  Judge Crotty signed an order.  He put his own "so

6      ordered" in.  It wasn't that it was submitted by anybody.

7      He signed the stipulation "with prejudice, so ordered."

8              THE COURT:  My question is did he reach the

9      merits of the dispute?  Isn't that' critical on a res

10     judicata issue?

11             MR. SLOTNICK:  I think he has, your Honor.

12             THE COURT:  How could he have reached the merits

13     if he didn't have an answer and the merits were never

14     before him?

15             MR. SLOTNICK:  Because the parties presented to

16     him simply the resolution to the matter and this matter was

17     resolved.  Unfortunately --

18             THE COURT:  I don't see how this can be a

19     decision by Judge Crotty on the merits.  I think the issue

20     is, maybe, what the stipulation means between the parties.

21     Does it mean a stipulation with prejudice in the federal

22     court knowing there is a state action pending?  Does it

23     mean it is with prejudice involving the state action; and

24     if so, why wasn't the state action included in that

25     stipulation?

26             MR. SLOTNICK:  I think respectfully, then, the

4

1            Proceedings
2      person to be addressing this issue is Judge Crotty.  I
3      mean, Judge Crotty took the stipulation --
4            THE COURT:  How procedurally does he get to
5      address the issue?
6            MR. SLOTNICK:  They can make a motion, your
7      Honor, and they can ask him to review what has come
8      forward.  This is not, respectfully -- and I say this most
9      respectfully, to one of the smartest judges in the
10     courthouse.  Most respectfully, your Honor, this is not for
11     you to decide whether Judge Crotty had decided that
12     decision or not.
13            First of all, I think it is irrelevant.
14            THE COURT:  Why is it irrelevant?
15            MR. SLOTNICK:  Because we have a document that
16     simply says this case is dismissed with prejudice.  We have
17     a document that clearly lays out the facts that this matter
18     is done, finished, resolved.
19            THE COURT:  How does it differ from the cases
20     which were cited which state that even where the parties
21     write "dismissal on the merits" that every Court that
22     looked at that question looked behind the words "on the
23     merits" to see whether it was really on the merits even
24     though the parties have said that.  How is this different?
25            MR. SLOTNICK:  It is different because the
26     parties have agreed that this matter is to be dismissed

Rachel C. Simone, CSR, RMR, CRR

1                    Proceedings

2       with prejudice.  Those are very important words, your

3       Honor.

4                    As your Honor well knows, I am arguing the res

5       judicata effect on this Court.

6                    THE COURT:  I know that.

7                    MR. SLOTNICK:  So it is quite clear that your

8       Honor can say, well, that's terribly unfair, they didn't

9       get a chance, they are now suing in my court.  That's over

10      with.

11                   Judge, they could have --

12                   THE COURT:  When a motion is made on res judicata

13      grounds, doesn't the Court where the motion is made look at

14      the first action to determine whether that action was

15      resolved on the merits?  Isn't that fundamental res

16      judicata law?

17                   MR. SLOTNICK:  No, Judge.

18                   THE COURT:  It is not?

19                   MR. SLOTNICK:  It is not.

20                   THE COURT:  Okay.

21                   MR. SLOTNICK:  The law says, your Honor,

22      respectfully, a stipulation of this sort is deemed to be on

23      the merits.  The cases say it is deemed to be on the

24      merits.

25                   They now come here and they say, Judge, it is

26      unfair.  That's really what they are saying.  It is unfair.

6

Proceedings

1

2    We signed the stipulation, Judge Crotty so ordered it, and

3    now the case is being dismissed, it is so unfair.

4            They had their opportunity.  They will not lose

5    the right to come to this courthouse before Justice Fried

6    and argue the issues.  They had the right to do that.  They

7    can say by the way, Mr. Slotnick, did you forget about the

8    statute of limitations?

9            They have lots of defenses.  All we are

10   suggesting is that the issues in the stipulation that was

11   dismissed with prejudice are dismissed with prejudice.

12   There are lots of other issues in this case that they can

13   come forward with.

14           They can say the policy was a forgery.  They can

15   do -- they can make all those motions.  But to tell us now,

16   your Honor, that a decision made by a federal court judge

17   from the Southern District of New York and there's nothing

18   more special among judges, either federal court or state

19   court as your Honor well knows, the fact of the matter is

20   that this was dealt with, reviewed, decided, so ordered.

21   Judge Crotty put in "so ordered."

22           If you think he did something wrong and

23   inappropriate --

24           THE COURT:  I haven't used the word

25   "inappropriate" or the word "wrong."  I am simply asking

26   whether or not an entry on his docket where he says:  "It

Rachel C. Simone, CSR, RMR, CRR

7

1                              Proceedings

2          is hereby stipulated and agreed that the above-entitled

3          action for declaratory judgment be in the same hereby

4          discontinued with prejudice and without costs.  The clerk

5          shall close this case.  So ordered."

6                    How that can be on the merits is -- there may be

7          a separate issue why it is binding, but how that is a res

8          judicata dismissal on the merits when the merits were never

9          before the district judge, that I just don't understand.

10         There was no answer, and he never reached a decision.

11                   Aren't jurisdictional dismissals with prejudice

12         non-res judicata when you go from federal to state court or

13         vice versa?

14                   MR. SLOTNICK:  In this issue the answer is no.

15                   THE COURT:  No?  But this is the issue, isn't it?

16                   MR. SLOTNICK:  It really isn't the issue.

17                   THE COURT:  What is the issue?

18                   MR. SLOTNICK:  The issue is simply, your Honor,

19         this matter has been litigated.  This matter has been fully

20         litigated with regard to the issues that have been

21         dismissed out of the case with prejudice.

22                   THE COURT:  How has it been fully litigated?

23                   MR. SLOTNICK:  The parties stood up, they got

24         together, they entered into a contract, they gave it to

25         Judge Crotty, and he so ordered it.

26                   Now, if your Honor or someone were to suggest,

                    Rachel C. Simone, CSR, RMR, CRR

8

1                          Proceedings

2       well, that is terribly unfair, you know, at this point,

3       they are coming in and saying, well, they didn't know that

4       would cause a dismissal of the case; well, respectfully,

5       that stipulation was drawn by AXA, that stipulation was

6       submitted to the Court by AXA, that stipulation was agreed

7       upon by the parties.  What was the whole point of the

8       Southern District?  I mean.  The fact of the matter is,

9       respectfully, we appeared before the Southern District, and

10      at the end of that appearance there was a determination

11      that precluded this case from going forward on those four

12      grounds.  And, as I say, this case is not over.  They

13      can --

14                  THE COURT:  What do you mean by "this case is not

15      over," what does that mean?

16                  MR. SLOTNICK:  It means that they can move to

17      amend their complaint.

18                  THE COURT:  Where?

19                  MR. SLOTNICK:  Here, if they want to, not to

20      include what Judge Crotty dismissed.  For that they have to

21      go back to him.  But they can say, All right, Judge Crotty

22      dismissed, we all know the four issues.

23                  THE COURT:  I read them.  They are word for word

24      in each complaint.

25                  MR. SLOTNICK:  Exactly.  However, there are other

26      things that are involved here.  They can stand up and say,

9

1                        Proceedings

2        Judge, by the way, we would like to amend --

3                THE COURT:  If you are correct, why wouldn't they

4        be barred on that?  Doesn't res judicata bar all the issues

5        that could have been raised?

6                MR. SLOTNICK:  No, Judge.

7                THE COURT:  It doesn't?

8                MR. SLOTNICK:  It does not, respectfully.

9                Judge, our stip purposely narrowed what was to be

10       dismissed.  It was clearly -- our stip narrowed what was to

11       be dismissed which was clearly the four issues.

12               THE COURT:  Your stip doesn't say anything of the

13       sort:  "The above-entitled action hereby be and

14       discontinued with prejudice."

15               MR. SLOTNICK:  "The above-entitled action be and

16       hereby is discontinued."  The above-entitled action, that

17       was the matter that was before Judge Crotty.

18               Judge, let me put it this way.  They will stand

19       up and say, Judge, we would like to amend our complaint,

20       and we want to add in statute of limitations.

21               THE COURT:  They want to do what?

22               MR. SLOTNICK:  They want to amend their

23       complaint.

24               THE COURT:  I thought they want me to grant

25       summary judgment on the basis of exclusions.

26               MR. SLOTNICK:  Well, they do.  But ultimately

10

1                    Proceedings

2       they could stand up, your Honor -- they want you to grant

3       summary judgment.  They realize that you can't grant

4       summary judgment on what they have before you, so they now

5       ask you for the right to amend.  If you give them the right

6       to amend they can say, Oh, Judge, statute of limitations.

7       Well guess what, I am out of Court.  I shouldn't be out of

8       court because ultimately on four issues we won before Judge

9       Crotty.  That's not fair.  I can be out of court if they

10      have other issues that they want to present to the Court

11      other than forgery, misrepresentation, things of the sort

12      that they have not litigated.  We have litigated this

13      matter.

14              THE COURT:  What have you done to litigate this

15      matter?

16              MR. SLOTNICK:  There was a complaint filed.

17              THE COURT:  What else?

18              MR. SLOTNICK:  The parties obviously spent a lot

19      of time getting together.  I was not a fly on the wall in

20      their office when they said, Aha, look at this, we are

21      going to dismiss this matter with prejudice before Judge

22      Crotty and get an advantage.

23              THE COURT:  And what was it that caused the

24      dismissal?  What was it that caused this dismissal with

25      prejudice?

26              MR. SLOTNICK:  You are asking me what --

11

1                    Proceedings

2            THE COURT:  I am asking you what it was.

3            MR. SLOTNICK:  You are asking me the question

4    that I said to myself yesterday as I sat in the office

5    saying now, Judge Fried is going to say:  Okay, what was it

6    that caused the dismissal?

7            THE COURT:  You anticipated my question,

8    Mr. Slotnick.  That's my question.

9            MR. SLOTNICK:  What caused the dismissal was the

10   fact that the parties came to an agreement, the fact that

11   there was a contract, the fact that they said, We will

12   submit the papers.

13           THE COURT:  Weren't there jurisdictional

14   questions with regard to whether this case was properly in

15   the federal court or not?

16           MR. SLOTNICK:  Of course there were, your Honor.

17           THE COURT:  So if the dismissal was because of

18   the jurisdictional grounds, even if they said "with

19   prejudice," wouldn't that be a dismissal which is not

20   entitled to a res judicata effect under the case law?

21           MR. SLOTNICK:  Respectfully, your Honor, no.

22           THE COURT:  There is no question that the member

23   of the LLC here, if it was a New York citizen, there would

24   be no diversity here, was that the issue?

25           MR. SLOTNICK:  One of the issues.

26           Judge, I wasn't in their office.

Rachel C. Simone, CSR, RMR, CRR

12

1          Proceedings

2          THE COURT:  I am trying to understand what the

3  litigation was besides the discussion between the parties

4  that one of the LLC members was a citizen of New York and,

5  therefore, the Court did not have jurisdiction.  What other

6  litigation occurred in the Southern District?  What else

7  was done?  Were depositions taken?

8          MR. SLOTNICK:  No.

9          THE COURT:  There was no answer, right?

10          MR. SLOTNICK:  Respectfully, Judge, I think, your

11  Honor, we should not be going into this issue this way.

12  What we have here is a case that for whatever reason -- and

13  again I was not a fly on the wall, they thought at that

14  time that it was a very wise and smart thing to do to

15  dismiss, for whatever reason they thought, and I don't

16  think it really matters much, based upon the way the

17  dismissal "with prejudice," as I call it, is written.

18          THE COURT:  I think I get the picture,

19  Mr. Slotnik.

20          Let me hear from the other side.

21          MR. WADE:  May it please the Court, my name is

22  Dennis Wade.  My colleague Michael Bono is with me.

23          Your Honor --

24          THE COURT:  Mr. Wade, let me ask a question.

25          The parties entered into agreement that said

26  "with prejudice."  Why isn't that the end of it forgetting

Rachel C. Simone, CSR, RMR, CRR

Case 1:13-cv-04452-PAC   Document 11-7   Filed 08/20/13   Page 13 of 40

13

1                        Proceedings

2       about whether it is res judicata or not?  They stipulated

3       to dismiss this case.  How can you go back now and undo a

4       stipulation?

5                    MR. WADE:  For a variety of reasons.  The

6       first --

7                    THE COURT:  Give me the strongest first.

8                    MR. WADE:  In the first place, your Honor, when

9       we filed the action the plaintiffs asked for a series of

10      extensions of time to answer.  Eventually they said to us,

11      Oh, by the way, a member of the Nevada limited liability

12      corporation, Mr. Schupak, is an attorney, a member of the

13      New York bar, and is, in fact, a resident of the state of

14      New York.

15                   THE COURT:  Which would divest --

16                   MR. WADE:  Would have completely divested us of

17      diversity jurisdiction.

18                   So as lawyers representing AXA, we turned to

19      Mr. Slotnik and Ms. Davidson and we said, We have heard

20      what you said, but we are entitled to test what you say.

21      We are entitled to test your allegation that Mr. Schupak is

22      indeed a resident of the state of New York which would

23      defeat diversity jurisdiction.

24                   They submitted various documents which to us

25      established indeed Mr. Schupak was a bona fide resident of

26      the state of New York.  Diversity jurisdiction was

14

1                    Proceedings

2    defeated.

3           THE COURT:  Was there ever an appearance before

4    Judge Crotty on this issue or was it done on submission of

5    papers?

6           MR. WADE:  Excellent question, your Honor.  One

7    of the things you I wanted to point out is that Mr. Slotnik

8    said we appeared before Judge Crotty.  There was no

9    appearance before Judge Crotty.  In fact, having received

10   the proof that Mr. Schupak was a bona fide resident of the

11   state of New York we said, in essence, we don't want to tie

12   up Judge Crotty's time with a hearing on the issue.  We are

13   satisfied with your written submission.

14          THE COURT:  So the pre-motion conference was

15   adjourned.

16          MR. WADE:  It was not adjourned.  We just said

17   there is no point.  We are satisfied on written submission.

18   Let's get this off Judge Crotty's docket.  He doesn't have

19   jurisdiction.

20          Judge Crotty, really -- and I would like to

21   direct the Court's attention to the cases that --

22          THE COURT:  I read the cases.

23          MR. WADE:  Judge Crotty had no jurisdiction.  We

24   viewed it simply as a ministerial way that Judge Crotty can

25   clear his docket and, indeed, we agreed never to bring this

26   case again in federal Court because of diversity

                                                                    15

                              Proceedings

1

2      jurisdiction.

3              THE COURT:  So why didn't the stipulation say

4      that this was a stipulation of discontinuance between the

5      parties in light of the fact that there is no diversity

6      jurisdiction and therefore it was with prejudice.

7              MR. WADE:  Well, the simple answer is it didn't

8      say that, but at the time the stipulation was executed we

9      had filed an action in New York State Supreme Court --

10             THE COURT:  That action is this action, it was

11     filed before the stipulation.

12             MR. WADE:  Absolutely.  In fact, as soon as

13     Mr. Slotnik and Ms. Davidson mentioned there was an issue,

14     we had no idea where Mr. Schupak resided, as a precaution

15     we immediately filed in New York State Supreme Court so

16     that while we did the due diligence to ascertain the

17     residency that they claim we would have an action pending

18     in this court.  The stipulation significantly does not

19     embrace the action that they knew was filed in the New York

20     Supreme Court.  So from our perspective, all the

21     stipulation was a ministerial act so that Judge Crotty

22     could remove the case from his docket, he had no

23     jurisdiction for want of diversity of citizenship, and that

24     was the end of the matter.

25             In addition to that, your Honor, during the

26     pendency of these discussions, the plaintiffs filed an

16

1                        Proceedings

2       action in Clark County, Nevada.

3                  THE COURT:  That also predates the dismissal.

4                  MR. WADE:  Yes.

5                  THE COURT:  What is the status of the action in

6       Nevada?

7                  MR. WADE:  That action was dismissed by the

8       Honorable Timothy Williams on forum non-convenience

9       grounds.  And of significance during the argument before

10      Judge Williams in Nevada, there was no claim that no

11      argument should take place because --

12                 THE COURT:  Was that dismissal or argument after

13      the November 29 dismissal with prejudice in the Southern

14      District.

15                 MR. WADE:  Subsequent to the stipulation of

16      dismissal.

17                 THE COURT:  Are those papers part of this record?

18                 MR. WADE:  Parts of them are exhibited.

19                 THE COURT:  I don't remember seeing them.

20                 MR. WADE:  Judge Williams' decision dismissing

21      the case on forum non-convenience grounds is appended.

22      Certain excerpts of counsel's arguments are appended.

23                 THE COURT:  Okay.

24                 And the explanation is one that I can consider?

25      Can I look behind the stipulation?

26                 MR. WADE:  Well, the case law in New York

17

| | |
|---|---|
| | Proceedings |
| 1 | |
| 2 | suggests, as your questions imply, it is the duty of the |
| 3 | Court to ascertain whether the dismissal was on the merits. |
| 4 | THE COURT:  That's the first prong of the |
| 5 | argument.  I am not sure this is a dismissal on the merits |
| 6 | most respectfully to Mr. Slotnik's arguments.  But my |
| 7 | question is:  Is this an agreement between the parties, |
| 8 | which is binding?  It is not a release, but is it similar, |
| 9 | it covers everything when the parties agree? |
| 10 | MR. WADE:  It is certainly binding against AXA |
| 11 | bringing another action in federal court, but it is |
| 12 | certainly not binding against us litigating this case |
| 13 | before your Honor which was a case that we filed before the |
| 14 | stipulation was entered into and a case that was filed |
| 15 | before because of our concern that the federal court had no |
| 16 | jurisdiction. |
| 17 | THE COURT:  Why don't we give Mr. Slotnik the |
| 18 | last minute or two if there is something he wants to say. |
| 19 | Then I want to turn to summary judgment motion. |
| 20 | Do you want to add anything? |
| 21 | MR. SLOTNICK:  Yes, Judge, if I can, and I am |
| 22 | trying not to be repetitious. |
| 23 | THE COURT:  If you are I will tell you. |
| 24 | MR. SLOTNICK:  I am sure of that.  But I am also |
| 25 | passionate. |
| 26 | The fact of the matter, your Honor, is that the |

18

1                     Proceedings

2    stipulation -- this is repetitious -- says "with

3    prejudice."  I mean it is clear that's what it says.  They

4    never told Judge Crotty that he doesn't have jurisdiction.

5              THE COURT:  Why would they have to tell him that?

6    What would he care?

7              MR. SLOTNICK:  Because they opposed it.  They

8    opposed the stipulation and they -- I'm sorry, they

9    submitted the stipulation.  Your Honor, my office did not

10   write that stipulation.

11             THE COURT:  I don't think there is any dispute

12   about that.  But you say that they opposed it.  There was

13   no motion made, there was no answer filed, there was no

14   pre-motion conference.  So nothing was before Judge Crotty

15   except two lawyers submitted a document saying, thank you,

16   we are going across the street.

17             MR. SLOTNICK:  But, your Honor -- I am sorry, I

18   misstated.  They never told Judge Crotty that there was no

19   jurisdiction.  No one ever told Judge Crotty there was no

20   jurisdiction.

21             What we told Judge Crotty was that this case is

22   now settled.  It is done.

23             THE COURT:  Why do they have to give him the

24   reason for a dismissal?

25             MR. SLOTNICK:  They don't, and they live with

26   what they have done.

19

1                    Proceedings

2              THE COURT:  Okay.  Let's now go to the summary

3      judgment.

4              Counsel.

5              MR. SLOTNICK:  The dismissal in the Nevada case,

6      by the way, was for forum non-convenience.

7              THE COURT:  That's what I was just told.

8              MR. SLOTNICK:  And specifically it said "without

9      prejudice."  Specifically it said "without prejudice to

10     refiling."

11             THE COURT:  Was the argument in Nevada after

12     Judge Crotty dismissed it in New York?

13             MR. SLOTNICK:  Yes.

14             THE COURT:  Why wasn't the judge in Nevada told

15     that this was res judicata?  Why would you waste the

16     judge's time in Nevada if you thought it was dismissed with

17     prejudice?

18             MR. SLOTNICK:  It was two different cases, your

19     Honor.

20             THE COURT:  Was it the same case?

21             MR. SLOTNICK:  No.

22             THE COURT:  The complaint was different?

23             MS. DAVIDSON:  We were the plaintiff in that.

24             THE COURT:  But the complaint was --

25             MS. DAVIDSON:  It was a different case where RAI

26     was the plaintiff alleging different claims than were at

                   Rachel C. Simone, CSR, RMR, CRR

20

1                        Proceedings

2         issue in front of Judge Crotty.  And, contrary to

3         Mr. Wade's statement, counsel in Nevada did, in fact,

4         inform the Nevada judge that the federal case had been

5         dismissed with prejudice.

6                   THE COURT:  And the judge did it without

7         prejudice?

8                   MS. DAVIDSON:  Not only did the Court dismiss

9         without prejudice, but in the record there is the e-mail

10        that AXA's counsel drafted and sent to RAI's counsel

11        saying, We are specifically putting the "without prejudice"

12        language in there because we know you need that language in

13        order to be able to refile your claims in the proper forum.

14                  THE COURT:  Let's turn to summary judgment.

15                  MR. WADE:  Your Honor, AXA is entitled to summary

16        judgment based on the clear explicit language of the

17        policy.  And I know the Court has a banker's box of

18        documents and exhibits.

19                  THE COURT:  No, I don't.  I just have a stack of

20        exhibits.

21                  MR. WADE:  Okay, a stack.  But it probably would

22        fill a banker's box.  But I suggest to the Court there

23        really are two key exhibits.  The one exhibit that I would

24        like the Court to focus on is the complaint that was filed

25        before Judge Lowe on October 26 of 2007.  It was filed by

26        Renaissance Art Investors, LLC, against Salander-O'Reilly

21

1        Proceedings

2    Galleries, L. Salander LLC, and Lawrence B. Salander.

3           THE COURT:  That's where they acknowledge that

4    Salander was a principal of RAI as well as a manager?

5           MR. WADE:  Absolutely, your Honor.  And in that

6    complaint they have alleged that the defendants, all of the

7    Larry Salander entities, have swindled millions of dollars

8    from plaintiffs promising them ownership of one of the

9    largest collections of renaissance art in the United

10   States.

11          Of significance, your Honor, they alleged before

12   Judge Lowe in count one, which is entitled "fraud," that

13   the defendants induced plaintiffs to pay $42,197,666 for

14   works of art promising plaintiffs would receive ownership

15   of the works of art in exchange.  And the whole

16   complaint --

17          THE COURT:  It strikes me when this agreement was

18   entered into with the requirement of insurance to cover

19   consignment to Renaissance -- to the Salander Gallery,

20   whatever it is called, that these parties, at least it is

21   alleged in the underlying documents that in effect this is

22   an insurance fraud.

23          MR. WADE:  They committed it.

24          THE COURT:  That they committed.

25          It strikes me that this was part of the ultimate

26   fraud and theft that was committed by Mr. Salander.

22

1                          Proceedings

2              MR. WADE:  Mr. Salander, as alleged by RAI,

3        committed a massive fraud by looting the assets.

4              THE COURT:  Of the gallery.

5              MR. WADE:  Of the entity of which he was a

6        member, RAI, using the gallery as a front.

7              THE COURT:  Right.  That's the subject of the

8        indictment, is it not?

9              MR. WADE:  That's the subject of the indictment.

10             And with respect to the indictment, I think it is

11       significant, and we have appended to --

12             THE COURT:  But in his plea allocution he admits

13       everything you contend is the basis for the exclusion.

14             MR. WADE:  100 percent.  He admits stealing

15       $42 million.  In fact, reading from the allocution:

16             "The Court:  Count one involves the period from

17       April 14 of 2006 through May of 2006, and it alleges you,"

18       referring in this case to Salander, "stole property from

19       Renaissance Art Investors, LLC, and the value of that

20       property was approximately $45 million.

21             "Do you plead guilty to that charge?

22             "Yes."

23             And the gallery --

24             THE COURT:  I read all that.

25             What about the allegation that RAI is the victim

26       and not the perpetrator?

                   Rachel C. Simone, CSR, RMR, CRR

23

1              Proceedings

2              MR. WADE:  Well, your Honor, there is no doubt

3      that RAI was the victim of a massive fraud.  No doubt.  We

4      don't take a position to the contrary.  However, the

5      insurance that they procured from my client was limited.

6      They were represented by a sophisticated insurance

7      intermediary.  They could have procured fidelity coverage.

8      They didn't.  Although they did have the good sense to buy

9      key man life insurance for Salander.  But the point is that

10     our policy says:  "We do not insure any fraudulent,

11     dishonest, or criminal act or acts by you, anyone else with

12     an interest in the property, or anyone entrusted with the

13     covered property."

14              This exclusion, your Honor, was designed to avoid

15     and prevent the very claim that is being made here today.

16              There is no question that Larry Salander was an

17     intrical part of RAI.  There is no doubt that he was the

18     consignee of the property, there is no doubt that he was a

19     person as an individual and as a gallery to whom the

20     property was entrusted, and on his own plea of guilt there

21     is no doubt that he sold the property, disposed of it, and

22     basically looted the assets of his co-venturers.  And the

23     clear exclusion in the policy bars coverage for that very

24     type of conduct.

25              THE COURT:  The Abrams case is primary case you

26     rely on.

Rachel C. Simone, CSR, RMR, CRR

24

| | |
|---|---|
| 1 | Proceedings |
| 2 | MR. WADE:  Yes, your Honor. |
| 3 | THE COURT:  There is an argument, if I |
| 4 | understand, that you haven't demonstrated what properly was |
| 5 | entrusted or delivered, is that correct? |
| 6 | MR. WADE:  No, your Honor, that is not correct. |
| 7 | In fact, I think it is, to use the language of the Schorsch |
| 8 | case, a bit unseemly for RAI before Judge Lowe to argue in |
| 9 | a verified complaint that Salander and the gallery stole |
| 10 | all of the property, to make the same argument in the |
| 11 | United States Bankruptcy Court, and now before your Honor, |
| 12 | when they want to collect under their insurance policy, to |
| 13 | suggest differently.  You can't have it both ways.  You |
| 14 | can't occupy two years of Judge Lowe's time.  You can't gin |
| 15 | up the district attorney of the County of New York and |
| 16 | press your claim in the Bankruptcy Court arguing that |
| 17 | Salander and his gallery stole everything, and now in the |
| 18 | context of an insurance action suggest, Oh, there may be |
| 19 | issues of fact.  Some of the property may be lost in water |
| 20 | damage, we don't know.  You can't back away from these |
| 21 | quasi-judicial admissions and now argue a different case. |
| 22 | Your Honor, that is, to say the least, a bit unseemly. |
| 23 | So, your Honor, I think the clear language, |
| 24 | whether the dishonesty is of a principal of the |
| 25 | corporation, an employee of the corporation, or the |
| 26 | dishonesty of anyone to whom the property was entrusted, |

Rachel C. Simone, CSR, RMR, CRR

25

1                          Proceedings

2        the policy applies and the policy bars coverage.

3                In fact, when the forum non-convenience motion

4        was argued before Judge Timothy Williams in Clark County

5        Lawrence Mace, who was local counsel and represented RAI

6        sent in papers and said to Judge Williams, Your Honor,

7        there are no disputed issues of fact here.  This is simply

8        a matter of policy interpretation.  All you have to do is

9        apply the facts to the law.  There are no issues of fact.

10       Yet now, even though they took that position before the

11       Nevada court, and they took that position before Judge

12       Lowe, and they took that position in the Bankruptcy Court,

13       somehow for reasons that are never explained in their

14       papers, they want to take a different position before you.

15       That is, I suggest, your Honor, an unseemly way to proceed.

16                THE COURT:  Let me hear from counsel.

17                MR. WADE:  Thank you.

18                MS. DAVIDSON:  Thank you, Judge.

19                THE COURT:  Why aren't the proceedings before

20       Judge Lowe where you admitted in your verified pleadings

21       that Salander and the gallery had voting control and

22       partnership rights, interests in RAI, both had an economic

23       interest, why isn't that binding?

24                MS. DAVIDSON:  For at least two reasons.  I think

25       there are seven, but I will start with the first two which

26       I think are the most critical.

26

```
 1                      Proceedings
 2              First, it was not a verified complaint, it was an
 3      unverified complaint.  Contrary to what Mr. Wade states in
 4      his papers, that means it is not within the realm of a
 5      binding judicial admission.  It is, at best, ordinary
 6      evidence that can be contradicted by a party later on.  And
 7      we have put into the record in this case the evidence that,
 8      frankly, I don't think contradicts what was said before --
 9              THE COURT:  What was that?
10              MS. DAVIDSON:  I don't believe the evidence we
11      have presented in this case contradicts what was said
12      before, but it explains it and puts it in context.
13              For example, in the complaint that was filed in
14      2007, I believe it was, that was before Judge Lowe, we, as
15      Mr. Wade indicated, collectively defined all three of the
16      named defendants as "the defendants."  And then throughout
17      that complaint, which again is unverified, we make certain
18      allegations, for example, that the works of art were
19      consigned.
20              What we have done here is we have said, yes, they
21      were consigned, they were consigned to the
22      Salander-O'Reilly Gallery who was one of those defendants
23      named in that case, and we have presented the Court and
24      directed the Court to the consignment agreement itself that
25      makes clear who the works of art were consigned to, and
26      that would be the Salander-O'Reilly Gallery.
```

27

1          Proceedings

2          By way of another example, and this is one that

3   Mr. Wade referenced in his argument this morning, we allege

4   that Mr. Salander himself was a principal of RAI.  Again,

5   we have pointed to the operating agreement and the

6   consignment agreement that defines Mr. Salander as a

7   principal of RAI but not in the way that Mr. Wade is

8   suggesting.  It identifies him as someone who has

9   significant knowledge about the world of renaissance art,

10  and, therefore, would be intimately involved in this

11  process.

12          THE COURT:  Is there a factual issue as to the

13  involvement or the interest that Salander and the gallery

14  had in RAI?

15          MS. DAVIDSON:  Yes, Judge, I believe there is.

16          THE COURT:  What is the factual issue?

17          MS. DAVIDSON:  I believe the evidence, the

18  documentary evidence, primarily the operating agreement

19  itself, identifies who the members of RAI are.  It is

20  clear, and it identifies the Salander-O'Reilly Gallery as a

21  Class B member.  And then the operating agreement further

22  defines the rights, duties, obligations of a Class B

23  member.

24          The operating agreement also states that Larry

25  Salander is a member of a member of a member of the

26  Salander-O'Reilly gallery.

Rachel C. Simone, CSR, RMR, CRR

28

1                          Proceedings

2              THE COURT:  His allocution in the criminal

3       proceeding is not undisputed?

4              MS. DAVIDSON:  Well, I think the interpretation

5       of that allocution is undisputed.  What is not disputed?

6       It is not disputed that Larry Salander and the gallery

7       defrauded RAI.  That is absolutely not disputed.

8              THE COURT:  Everybody agrees upon that.

9              MS. DAVIDSON:  Yes.  The question is:  What was

10      the nature and extent of the fraud that Mr. Salander

11      committed?  And if you look at the transcript of his

12      allocution and the indictment, both of which are exhibits

13      in this record, there were two different counts that

14      applied to the fraud perpetrated on RAI.  The first count,

15      as Mr. wade acknowledges, applied to the time period

16      April 2006 -- April 14, 2006, through May 2, 2006.

17             Now, those dates are significant because the

18      three bills of sale pursuant to which RAI acquired this art

19      in the first instance are dated April 14 and May 2, 2006.

20      So count one relates to the fraud that Larry Salander

21      committed when he convinced RAI to buy the art in the first

22      place.  None of that fraud has any relevance or bearing to

23      the insurance claims, because the claims that RAI makes on

24      the insurance policy has nothing to do with the losses it

25      suffered when it bought the art.

26             THE COURT:  But I thought there was no dispute

                   Rachel C. Simone, CSR, RMR, CRR

29

1                         Proceedings

2       that are RAI consigned the artwork to Larry Salander.  I

3       thought --

4                  MS. DAVIDSON:  No, Judge, that is very much

5       disputed.  That's the position that they take.  What RAI

6       states in opposition to that fact is that in truth the art

7       was consigned to the Salander-O'Reilly Gallery, not to

8       Larry Salander individually.  And that is critical.  And,

9       frankly, Judge --

10                 THE COURT:  Why is that critical?

11                 MS. DAVIDSON:  Because when we get to the

12      language of the exclusion it is actually very narrowly

13      drafted.

14                 The exclusion in the policy applies -- and I will

15      use Mr. Wade's words because I wrote them down.  The policy

16      defines "you" as RAI.  There is no dispute, and I was glad

17      that Mr. Wade acknowledged that RAI has been the victim of

18      all this and not the perpetrator, so there is no realm in

19      which the exclusion can lie based on you, meaning RAI.

20                 Second, you look at anyone with an interest in

21      the property.  And there are two critical components of

22      that phrase.  "Anyone" and "with an interest in the

23      property."

24                 "Anyone" is commonly used and defined in multiple

25      dictionaries as a person; not as an entity, not as a legal

26      construct but as a human being.

                   Rachel C. Simone, CSR, RMR, CRR

30

1                    Proceedings

2            THE COURT:  I read that with great interest.

3            Did you see the New York Times this morning where

4    there is a letter to the editor criticizing Scalia's most

5    recent decision in the Supreme Court relying entirely on a

6    dictionary definition?

7            MS. DAVIDSON:  I did not, Judge.  I was preparing

8    for this and didn't see that.

9            THE COURT:  It is interesting.  You should read

10   it.

11           MS. DAVIDSON:  So where the law is clear that it

12   is the insurance carrier's burden to prove that the -- and

13   this is critical -- interpretation and definition of an

14   exclusion term proffered by the insured is implausible.  It

15   cannot under any realm be considered plausible.

16           I submit, your Honor, that a definition based

17   upon a dictionary --

18           THE COURT:  Is there a case that says that the

19   word "anyone" in this type of contract relates only to

20   entities and not to individuals?

21           MS. DAVIDSON:  Judge, in our search of the case

22   law we have not found any case in the insurance context or

23   anywhere in New York that specifically addresses this

24   issue.  Now, what there is case law on is the Court of

25   Appeals in the entrustment context, and this is the case of

26   Facet Industries --

31

| | |
|---|---|
| 1 | Proceedings |
| 2 | THE COURT:  The Abrams case? |
| 3 | MS. DAVIDSON:  No.  This is Facet Industries, the |
| 4 | 1984 decision from the Court of Appeals that actually walks |
| 5 | away to a certain extent from the reasoning of the Abrams |
| 6 | case. |
| 7 | In that case -- |
| 8 | THE COURT:  The question is:  Is there any |
| 9 | decision, I don't know of any that you have cited to me, |
| 10 | that says that the word "anyone" only excludes entities and |
| 11 | not individuals? |
| 12 | MS. DAVIDSON:  Judge, the answer to that is in |
| 13 | our search we have not found a case that has addressed how |
| 14 | anyone should be defined whether as a person or as a |
| 15 | business entity or both. |
| 16 | THE COURT:  Why shouldn't it be both when you |
| 17 | read this agreement? |
| 18 | MS. DAVIDSON:  Because when an insurance policy |
| 19 | exclusion is at issue, the question of law for the Court |
| 20 | is:  Does the insured offer a plausible interpretation?  It |
| 21 | is not necessarily the best interpretation, it doesn't have |
| 22 | to be reasonable.  It could be one of twenty. |
| 23 | THE COURT:  What is implausible about concluding |
| 24 | that the word "anyone" applies to an entity as well as a |
| 25 | person? |
| 26 | MS. DAVIDSON:  There are two reasons I would |

Rachel C. Simone, CSR, RMR, CRR

32

1                          Proceedings
2        submit for that.  One, the dictionary defines "anyone" as a
3        person.  So an interpretation of a word based on what the
4        dictionary defines it as, I submit, is plausible.
5                  Two, which has greater implications for this
6        particular case, there is a huge difference between, quote
7        unquote, entrusting your property to a person and, quote
8        unquote, entrusting your property to a company.
9                  A company is bound by certain legal constraints
10       and structures that an individual may not be bound by.  For
11       example, it has employees, it has other members of the
12       company.  It presumably has systems in place to make sure
13       that the people working there are doing their job and doing
14       it properly and not swindling people.
15                 THE COURT:  Why can't the person have the same
16       obligations?
17                 MS. DAVIDSON:  A person may have the same
18       obligations, but there is not the same level of oversight
19       and supervision and control over a person that is built
20       into a corporate structure.  And so in this context, not
21       only is it a dictionary definition that renders it
22       plausible, but it is also the interpretation that RAI had
23       at the time.  Because RAI knew it was consigning the art,
24       and that's entrustment, an issue I will address later.  It
25       was consigning it to a company that had all of the systems
26       and processes in place and provided an additional level of

                    Rachel C. Simone, CSR, RMR, CRR

33

<pre>
 1                        Proceedings
 2      comfort, if you will, that this would be handled
 3      appropriately.
 4                 Now, as it turns out, in retrospect RAI was duped
 5      from the beginning.
 6                 THE COURT:  Was what?
 7                 MS. DAVIDSON:  Was duped from the beginning.
 8      Larry Salander admits in his criminal allocution that he
 9      defrauded RAI from day one.
10                 THE COURT:  The day the consignment agreement was
11      signed.
12                 MS. DAVIDSON:  Before that.
13                 THE COURT:  Before that?
14                 MS. DAVIDSON:  Yes.  Before they even entered
15      into the deal where RAI bought the art.  That's the
16      critical distinction between count one of the indictment
17      against Larry Salander and count two of the indictment.
18                 Count one relates to everything leading up to RAI
19      buying the art.  And, again, the dates are critical because
20      they are dates of the three bills of sale where RAI buys
21      the art.  Count two in contrast relates to the fraud that
22      Larry Salander committed on RAI after RAI had consigned the
23      art to the gallery.  And in that context -- and it is only
24      that context that is at issue in this case, because the
25      only losses that RAI is claiming under the insurance policy
26      are the losses that occurred after the consignment.  What
</pre>

34

<pre>
                        Proceedings
 1
 2    Larry Salander says is, yes, I defrauded RAI, but I did it
 3    to the extent of $3.6 million.
 4              So, again, when you go back to 2007 and RAI's
 5    unverified complaint claiming that Larry Salander
 6    perpetrated this fraud, we were right.  What RAI was wrong
 7    about, however, was the extent to which that fraud applied.
 8    At the time, RAI believed it applied to all 300-plus works
 9    of art.
10              THE COURT:  Don't you allege in the case in New
11    York as well as, I think I saw it in the Nevada complaint
12    but I am not sure, that these works were stolen by
13    Salander?  Isn't there an allegation of that?
14              MS. DAVIDSON:  Yes, Judge.  Back in 2007 in that
15    unverified complaint, RAI did allege that Larry Salander
16    stole the entire portfolio of art.  We then took discovery.
17    Since then he would have recovered approximately half of
18    those works of art.  So clearly we were wrong, he didn't
19    take all of them because we got half back.
20              We also went through discovery to figure out what
21    he had done with the other works of art.  It turns out that
22    $3.6 million of art was stolen and defrauded by Larry
23    Salander.  That leaves another group of art that is lost,
24    that is out there, that not RAI, not the district attorney,
25    and now not AXA has proffered any causation for that loss.
26              THE COURT:  Who was entrusted with the
</pre>

Rachel C. Simone, CSR, RMR, CRR

Case 1:13-cv-04452-PAC   Document 11-7   Filed 08/20/13   Page 35 of 40

35

1                        Proceedings

2        consignment of art?

3                MS. DAVIDSON:  Judge, I would submit respectfully

4        that under the circumstances and facts of this case no one

5        was entrusted.

6                THE COURT:  No one?

7                MS. DAVIDSON:  No.

8                THE COURT:  So when the consignment agreement

9        says that the property is being entrusted to the gallery of

10       which Salander has an interest, that's something I should

11       just disregard?

12               MS. DAVIDSON:  No, Judge.

13               First of all, I respectfully submit Larry

14       Salander does not have an interest in RAI.

15               THE COURT:  The gallery?

16               MS. DAVIDSON:  Nor does he have an interest in

17       the gallery.  Larry Salander is a member of L. Salander

18       LLC, and L. Salander LLC is one members of the gallery.

19       There is no direct link between Larry Salander and the

20       gallery.  There is no direct link between Larry Salander

21       and RAI.  However, let's assume that there is for purposes

22       of your question.  What the law states in the entrustment

23       arena is that entrustment is viewed from the perspective of

24       the insured, Mr. Wade and I agree on that, and that what

25       you look for is some indication that there was a measure of

26       confidence on the part of the insured that the party to

36

1                    Proceedings

2      whom the property was given would use it for its intended

3      purpose.

4              Now, when you further read the cases, they talk

5      about what does it mean to have confidence?  And I submit

6      that this is an area of the law where you compare the

7      Abrams case from the Court of Appeals in 1935, to the Facet

8      case from the Court of Appeals in 1984, and other

9      subsequent cases, and there is a thread throughout those

10     cases that while it has never been necessary to decide --

11             THE COURT:  If Abrams is not limited, as you

12     argue, in the subsequent cases, is that the end of the day

13     here?

14             MS. DAVIDSON:  No.

15             THE COURT:  Why not?

16             MS. DAVIDSON:  Because, again, even if you find

17     entrustment occurred by virtue of the consignment to the

18     gallery, that was a consignment to the gallery.  So RAI in

19     that world, which I respectfully disagree with, would be

20     deemed to have entrusted its art to the gallery, okay?

21             The exclusion language for anyone entrusted with

22     the property says "anyone entrusted with the property," so

23     for you to rule in AXA's favor you would have to decide

24     that RAI's proffered definition of "anyone" as a person is

25     not plausible because there is no evidence here that RAI

26     entrusted the property to Larry Salander the individual.

                Rachel C. Simone, CSR, RMR, CRR

37

1                          Proceedings

2              Now let's take a step back.

3              Even if you get to that point, at most you have

4    evidence on this record that the fraud committed by the

5    gallery or by Larry Salander caused $3.6 million of losses.

6    AXA has made no attempt to state that $3.6 million figure

7    applies to these ten, twenty, a hundred works of art

8    subject of the insurance claim, nor have they given any

9    explanation for the remaining $18 million of losses that

10   are the subject of this insurance claim.

11             So even if you find that the definition of

12   "anyone" as a person is not plausible, that consignment

13   equals entrustment, and that the entrustment was to the

14   gallery and to Larry Salander; at best you can conclude

15   that you can take RAI's claimed loss of $21.5 million and

16   subtract $3.6 millions from that and we fight over the

17   remaining $18 million.

18             THE COURT:  Thank you.

19             Briefly, counsel.

20             MR. WADE:  Your Honor, it sounds like we are

21   talking about how many angels can dance on the head of a

22   pin.

23             THE COURT:  I didn't hear the word "angel" or the

24   word "pin."

25             MR. WADE:  The consignment agreement ends with

26   the signatures of Lawrence Salander, Andrew Schupak, and

                  Rachel C. Simone, CSR, RMR, CRR

38

1                           Proceedings

2       Donald Schupak; and it ends with various recitals that each

3       of the undersigned were all members of the agreement and

4       agree that the entire agreement is binding on the

5       undersigned and that all individuals and entities that he

6       controls directly or indirectly are bound by the agreement.

7               So when you read the signature of the principals,

8       it is an acknowledgment by Larry Salander who was the

9       largest single investor in RAI, he contributed $14 million

10      to the venture, he as a principal executed the agreement

11      attesting to the other members, the other signatories that

12      he and any entity or corporation that he controlled would

13      be bound by the terms of the operating agreement.  So there

14      really is no distinction in fact or in law between Larry

15      Salander and the Salander-O'Reilly Galleries.

16              But as we have pointed out, your Honor, the

17      dishonest entrustment exclusion applies to anyone with an

18      interest in the property.

19              THE COURT:  That's the argument on the Abrams

20      case whether it has been limited or not, correct?

21              MR. WADE:  Absolutely.

22              THE COURT:  I read your papers on that.

23              MR. WADE:  Thank you, your Honor.

24              THE COURT:  Anything else?

25              MR. WADE:  I am finished unless the Court has

26      further questions.

39

1                     Proceedings

2              THE COURT:  I have no questions.  Thank you.

3              Ms. Davidson, if you want a minute, take a

4        minute.

5              MS. DAVIDSON:  Very briefly.

6              First I would like to correct the statement that

7        Larry Salander was the single largest investor in RAI.

8        There is absolutely no evidence of that.

9              Secondly, the key phrase that Mr. Wade said was

10       "directly or indirectly."  And as I explained, Mr. Salander

11       did have an indirect interest but no direct interest.

12             THE COURT:  You know what I would like to do is

13       read this transcript when I get it.  I will stay any

14       discovery until I resolve these issues because if I dismiss

15       it that's the end of it.  If I grant summary judgment,

16       that's the end of it.  And there will be plenty of time to

17       start the discovery.

18             I think it will take three or four months to get

19       this done.  I will mark this down for a control date of

20       October 3.  That's not a court date but a control date.

21       Get me the transcript when it is available.  And when I get

22       to it I will get to it.

23             Thank you, counsel.  Have a good day.

24             MR. WADE:  Thank you.

25             MS. DAVIDSON:  Thank you.

26             MR. SLOTNICK:  Your Honor, if we reread the

                     Rachel C. Simone, CSR, RMR, CRR

40

Proceedings

1

2    transcript and find something we missed, may we submit it

3    to the Court?

4              THE COURT:  Something you missed, what does that

5    mean?

6              MR. SLOTNICK:  Your Honor is getting a copy of

7    this transcript --

8              THE COURT:  Now, I will not take additional until

9    submissions.

10             MR. SLOTNICK:  Okay.  Thank you.

11             MR. WADE:  Thank you, your Honor.

12                  *         *         *

13        The foregoing is hereby certified to be a true and

14    accurate transcript of the proceedings.

15

16

17    _____

18             Rachel C. Simone

19             Senior Court Reporter

20

21

22

23

24

25

26

Rachel C. Simone, CSR, RMR, CRR

FILED: NEW YORK COUNTY CLERK 07/26/2011                    INDEX NO. 651844/2010
NYSCEF DOC. NO. 7    Case 1:13-cv-04452-PAC    Document 11-8    Filed 08/20/13    Page 1 of 9    RECEIVED NYSCEF: 07/26/2011

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: **HON. BERNARD J. FRIED**          **E-FILE**          PART **60**

Index Number : 651844/2010

**AXA ART INSURANCE CORPORATION**          INDEX NO. **651844/10**

vs

**RENAISSANCE ART INVESTORS LLC**          MOTION DATE _____

Sequence Number : 003          MOTION SEQ. NO. **003**

**DISMISS**          MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

**Cross-Motion:** ☐ Yes    ☐ No

**Upon the foregoing papers, it is ordered that this motion**

This motion is decided in accordance with the attached memorandum decision.

SO ORDERED

Dated: _7/25/2011_                    **HON. BERNARD J. FRIED**    *J.S.C.*

Check one: ☒ **FINAL DISPOSITION**    ☐ **NON-FINAL DISPOSITION**

Check if appropriate: ☐ **DO NOT POST**    ☐ **REFERENCE**

☐ **SUBMIT ORDER/ JUDG.**    ☐ **SETTLE ORDER/ JUDG.**

*MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK  :   IAS PART 60
-----------------------------------------------------------------------------x
AXA ART INSURANCE CORPORATION, a New York
corporation,

                        Plaintiff,                              Index No.
                                                                   651844/10

        -against-

RENAISSANCE ART INVESTORS, LLC, a Nevada limited
liability company,

                        Defendant.
-----------------------------------------------------------------------------x

**APPEARANCES:**

    For Plaintiff:                    For Defendant:

Wade Clark Mulcahy           Buchanan Ingersoll & Rooney PC
111 Broadway, 9th Floor        New York Times Building
New York, New York 10006    620 Eighth Avenue, 23rd Floor
(Dennis M. Wade; Michael A.   New York, New York 10018
Bono)                         (Barry I. Slotnick; Kristi A. Davidson)
(212) 267-1900              (212) 440-4400

**FRIED, J.:**

      In this declaratory judgment action, defendant Renaissance Art Investors, LLC

(RAI) moves for an order dismissing this action with prejudice, based upon the principle

of res judicata.  Plaintiff AXA Art Insurance Corporation (AXA) cross-moves, pursuant

to CPLR 3212, for an order granting summary judgment in its favor, and declaring that it

has no duty to indemnify RAI.

      AXA, an insurer of fine art, issued two policies of insurance to RAI under policy

number 01-334-31-06-00026 (collectively, the Policies).  According to the complaint,

RAI was one of many fraud victims of Lawrence Salander (Salander) and the Salander-O'Reilly Galleries, LLC (the Gallery). The complaint asserts that RAI was formed by a group of investors, including the Gallery and L. Salander LLC (Salander LLC). AXA alleges that RAI then entered into a series of transactions with the Gallery, which was supposed to find art buyers on RAI's behalf, using Salander's many contacts in the art world. Instead, according to the complaint, Salander and the Gallery fraudulently swindled RAI out of millions of dollars.

On January 8, 2008, RAI sent a claim letter to AXA in connection with the alleged loss of works of art worth at least $42,197,660.00 that RAI had "consigned to" the Gallery.[1] On June 3, 2008, after concluding its investigation of RAI's claim, AXA denied coverage. In the instant action, AXA seeks a judicial declaration that it has no duty to indemnify RAI for its claimed loss, which AXA asserts resulted from the fraud of the Gallery and Salander.

On July 22, 2010, AXA filed a complaint in *AXA Art Ins. Corp. v Renaissance Art Invs., LLC*, Civil Action No. 10 CIV 5581, SD NY (the Federal Action). Three months later, AXA commenced the instant action, alleging the same claims, based upon the same underlying facts and circumstances, as those set forth in the Federal Action. On November 29, 2010, the parties to the Federal Action entered into a Stipulation and Order of Dismissal that stated that the Federal Action was "discontinued with prejudice." The stipulation was "so ordered" by the Judge.

---

[1]
    RAI states that, since the time it notified RAI of its loss in January 2008, it has recovered a number of works of art, thereby reducing its insurance claim to approx $23 million (exclusive of interest).

2

RAI argues that its motion to dismiss should be granted because, pursuant to basic res judicata principles, AXA may not continue to pursue its claims in the instant action after the same claims were dismissed "with prejudice" in the Federal Action. AXA argues that RAI's motion should be denied because the Federal Action was discontinued due to lack of subject matter jurisdiction, and such dismissal was not on the merits. AXA explains and it is undisputed, that before RAI answered or otherwise responded to the complaint in the Federal Action, RAI informed AXA that it intended to move to dismiss that action on the ground of lack of subject matter jurisdiction, due to the lack of diversity between AXA and Donald Schupak, one of RAI's principals. AXA asserts that, upon learning of potential jurisdictional issues in the Federal Action, it commenced the instant lawsuit. AXA maintains that, after it received sufficient information that Donald Schupak was a citizen of New York, it agreed to discontinue the Federal Action.

RAI's motion is denied. Although the phrase "with prejudice" in a stipulation of discontinuance creates a presumption of "res judicata effect in a subsequent action on the same cause of action, a court may always consider evidence that the parties intended otherwise." *Singleton Mgt. v Compere*, 243 AD2d 213, 216 n * (1st Dept 1998) (internal citations omitted); *see also Van Hof v Town of Warwick*, 249 AD2d 382, 382 (2d Dept 1998) (holding that, although "with prejudice" is generally given res judicata effect, it should be "narrowly interpreted when the interests of justice, or the particular equities involved, warrant such an approach").

A New York state court's dismissal of an action "with prejudice" due to lack of jurisdiction is not an adjudication on the merits, and thus does not bar a plaintiff from pursuing the action in a proper jurisdiction. *Brown v Bullock*, 17 AD2d 424, 428 (1962).

3

In the instant case, it is undisputed that AXA commenced the instant action prior to the discontinuance of the Federal Action, and that the Federal Action was discontinued on the basis of lack of subject matter jurisdiction because there was not complete diversity among the parties.  "In properly seeking to deny a litigant two 'days in court', courts must be careful not to deprive [the plaintiff] of one."  *Matter of Reilly v Reid*, 45 NY2d 24, 28 (1978).  RAI's motion is denied.

In support of its cross motion for summary judgment, AXA asserts that the applicable provisions in the Policies are clear and unambiguous.  The Policies provide coverage to RAI against "direct physical 'loss' to Covered Property unless the loss is excluded in Section B - Exclusions."  Section B(3) of the Policies' Corporate Fine Art Coverage sets forth the following exclusions to coverage:

> 3.  Any fraudulent, dishonest, or criminal act or acts by:
>     (a)  You, anyone else with an interest in the property or your or their employees whether or not committed alone or in collusion with others, whether or not such act or acts be committed during the hours of employment; or
>     (b)  Anyone entrusted with the Covered Property.
>     But the exclusion does not apply to a carrier for hire

(hereinafter, the Fraud Exclusion).

AXA notes that on October 26, 2007, RAI commenced an action in this court against Salander, Salander LLC and the Gallery entitled *Renaissance Art Invs., LLC v Salander-O'Reilly Galleries*, index no. 406611/07 (the 2007 Action).  In the 2007 Action, RAI alleged causes of action including fraud, breach of fiduciary duty and unjust enrichment due to Salander's and the Gallery's fraud.  The complaint in the 2007 Action alleges that Salander and the Gallery "swindled" millions of dollars from RAI by fraudulently promising RAI ownership of a large private collection of Renaissance

4

artwork. According to the complaint in the 2007 Action, the fraud consisted of, among other things, secretly selling over 200 pieces of RAI's artworks without informing RAI and without transferring the proceeds of the sales to RAI.

AXA notes that Salander's partners in RAI sued Salander and the Gallery, ultimately forcing them into bankruptcy. The Manhattan District Attorney also indicted Salander and the Gallery, charging them with theft of more than $120 million, including RAI's assets. On March 18, 2010, Salander and the Gallery pled guilty to grand larceny in the 1st, 2nd and 3rd degrees. Counts I and II of the indictment, to which both Salander and the Gallery pled guilty, are the counts that refer to their theft of property from RAI.

According to RAI's January 1, 2006 Operating Agreement, Salander was one of three principals of RAI, along with Donald Schupak and Andrew Schupak. Salander's crucial role in forming RAI and managing its operations is highlighted by, among other things, the requirement in the Operating Agreement that RAI maintain a $50,000,000 "key-man" life insurance policy to insure Salander's life "for the benefit of [RAI]." (Operating Agreement at 4.2[b]ii.)

The Gallery was RAI's exclusive consignee pursuant to a January 1, 2006 Consignment Agreement between the Gallery, as consignee, and RAI and a wholly-owned subsidiary of RAI. The Consignment Agreement, inter alia, sets forth Salander's critical and central role as the sole manager of Salander LLC, which is the sole manager of the Gallery. At section 11(f), Salander agrees to continue to hold and exercise his rights and powers in that role throughout the term of the Consignment Agreement. Furthermore, in the Operating Agreement, Salander personally and unconditionally

5

guarantees the Gallery's obligations as consignee as they are set forth in section 4.3(b)

therein.

In applying the language of the Fraud Exclusion to the facts of this case, AXA

contends that both Salander and the Gallery qualify as at least one of the following:

"You"; "Anyone else with an interest in the property"; An employee of "You" or of

"Anyone else with an interest in the property"; or "Anyone entrusted with the Covered

Property." RAI, by contrast, contends that none of the language of the Fraud Exclusion

applies to Salander and the Gallery. If it is determined that any one part of the Fraud

Exclusion is applicable, there is no need to address each separate possible exclusion

within section B(3). Since B(3)(b), which excludes "[a]ny fraudulent, dishonest, or

criminal act or acts by: [a]nyone entrusted with the Covered Property" is clearly

applicable to the circumstances herein, AXA, has no duty to indemnify RAI.

RAI entrusted its artworks to the Gallery when it entered into the Consignment

Agreement, giving the Gallery possession of those works, as well as granting the Gallery

and Salander power to buy, sell, and make other decisions regarding those works.

Entrustment involves

> a surrender or delivery or transfer of possession with confidence that the
> property would be used for the purpose intended by the owner and as
> stated by the recipient. The controlling element is the design of the owner
> rather than the motive of the one who obtained possession. Because
> plaintiff was deceived and [its] confidence was abused, [plaintiff]
> *entrusted* [its] property to a thief.

*Abrams v Great Am. Ins. Co.*, 269 NY 90, 92 (1935). Similarly, here, it is clear that the

art works were entrusted to the Gallery, even though RAI was deceived by the Gallery

and Salander as to their intentions.

6

RAI argues that the word "Anyone" in the phrase "Anyone entrusted with the Covered Property" applies only to human beings and not to organizations. It contends that, because the art works were entrusted to the Gallery, which is a limited liability company, and not to Salander, who is a person, the exclusion cannot apply. RAI offers no support for such an interpretation. If the Gallery, as an organization, can plead guilty to grand larceny, as it did on March 18, 2010, for the thefts it committed, surely it can also be found to have been entrusted with the items that it stole. There is no plausible reason why an *individual* who committed fraud related to property entrusted to him/her would be excluded from coverage while an *organization* that committed fraud related to property entrusted to it would not be excluded from coverage. *See e.g. Cougar Sport v Hartford Ins. Co. of Midwest*, 190 Misc 2d 91 (Sup Ct, NY County 2000), *affd* 288 AD2d 85 (1st Dept 2001) (applying exclusion of "anyone" to whom property is entrusted to an organization).

Furthermore, the terms of the Consignment Agreement indicate the key role played by Salander, as well as the power he was given to make determinations as to the purchase and sale of artworks on behalf of RAI, as they were held by and consigned to the Gallery.

Finally, RAI now contends, for the first time, that some of the artworks at issue may not have been stolen by Salander and the Gallery, but may instead have been lost through negligence or otherwise. Such an assertion at this point, without any proof or explanation as to what may have happened to the art works, does not create an issue of material fact. AXA is thus entitled to summary judgment. In several pleadings and statements before courts, both in New York and in an action RAI filed against AXA in

Nevada on October 13, 2010, RAI stated that the facts giving rise to the loss were not in dispute, and that the only issue was whether or not the Policies covered the loss.  RAI cannot now undo those statements, with no explanation as to what has changed or why. Thus, AXA is entitled to summary judgment, as there is no issue of fact that the Fraud Exclusion's subsection dealing with entrustment applies to the circumstances herein.

Accordingly, it is

ORDERED that defendant's motion to dismiss is denied; and it is further

ORDERED that the cross motion of plaintiff for summary judgment seeking a declaration that it is not obliged to indemnify defendant is granted; and it is further

ADJUDGED and DECLARED that plaintiff herein is not obliged to indemnify defendant with respect to defendant's claimed loss.

DATED: _7/25/2011_

ENTER:

_____
J.S.C.

HON. BERNARD J. FRIED

*To be Argued by:*
BARRY I. SLOTNICK

New York County Clerk's Index Nos. 650271/11 and 651844/10

# New York Supreme Court

## Appellate Division—First Department

RENAISSANCE ART INVESTORS, LLC,

*Plaintiff-Appellant,*

– against –

AXA ART INSURANCE CORPORATION,

*Defendant-Respondent.*

Action No. 1
Index No.
650271/11

AXA ART INSURANCE CORPORATION,

*Plaintiff-Respondent,*

– against –

RENAISSANCE ART INVESTORS, LLC,

*Defendant-Appellant.*

Action No. 2
Index No.
651844/10

## REPLY BRIEF FOR PLAINTIFF-APPELLANT IN ACTION NO. 1 AND DEFENDANT-APPELLANT IN ACTION NO. 2

BARRY I. SLOTNICK
KRISTI A. DAVIDSON
TANYA D. BOSI
LAUREN A. ISAACOFF
BUCHANAN INGERSOLL & ROONEY PC
*Attorneys for Plaintiff-Appellant in Action No. 1*
*and Defendant-Appellant in Action No. 2*
1290 Avenue of the Americas, 30th Floor
New York, New York 10104
(212) 440-4400
barry.slotnick@bipc.com
kristi.davidson@bipc.com
tanya.bosi@bipc.com
lauren.isaacoff@bipc.com

PRINTED ON RECYCLED PAPER

million of property equates to stealing 155 works of art with an insured value of almost seven times that. *See* App. Br. at 38-40.

In sum, it is not RAI's accused silence that speaks loudly, Resp. Br. at 47,[15] but AXA's persistent misrepresentation of the record that speaks volumes. AXA did not prove that each one of RAI's 155 particular losses, when separately adjusted, were directly and proximately caused by the dishonest acts of anyone entrusted with the covered property and by no other possible cause. The Summary Judgment Order should be reversed.

## IV.   AXA SHOULD NOT BE PERMITTED TO CONTINUE TO PURSUE CLAIMS THAT WERE PREVIOUSLY DISMISSED WITH PREJUDICE

AXA's *res judicata* argument is premised entirely on the fact that in the Federal Declaratory Judgment Action AXA chose not litigate its claims to a final judicial determination. Instead, AXA chose to discontinue its claims with prejudice. AXA argues that because it did not fully litigate its claims, *res judicata* cannot apply. But *res judicata* does not require the claims to have been fully litigated; it only requires an adjudication on the merits. By force of law, a stipulation of discontinuance with prejudice <u>is</u> an adjudication on the merits. A stipulation of discontinuance without prejudice is not. *See* App. Br. at 56-58.

---

[15]   Contrary to AXA's baseless representation, RAI acknowledged the first count of the indictment in its opening brief, as it did in the court below; RAI simply did not dwell on it. *See* App. Br. at 37-39; R. 1137-38.

AXA also attempts to escape the consequences of its decision to dismiss its claims "with prejudice" by arguing that "with prejudice" should be construed to mean only that AXA would not bring its claim again in federal court. *See* Resp. Br. at 56-58. But with prejudice does not mean "I will not re-file here;" it means "I will not re-file <u>anywhere</u>." *See Black's Law Dictionary* (6th ed. 1990). As explained in RAI's opening brief, if AXA had wanted to dismiss its claims only in federal court, then it should have drafted a limited dismissal. *See* App. Br. at 59-61. Instead, AXA drafted and presented to RAI a stipulation that broadly said AXA was dismissing its claims "with prejudice." R. 894. RAI was entitled to rely upon the well-established meaning of those words.

Moreover, RAI took pains to clarify the meaning of the words "with prejudice" for this particular dismissal by adding to the stipulation an explicit reference to Federal Rule of Civil Procedure 41(a)(1)(B), which states: "*Effect*. Unless the notice or stipulation states otherwise, the dismissal is without prejudice [meaning the claims could be pursued elsewhere]. But if the plaintiff previously dismissed any federal-or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." R. 894, 1235-40. By specifically referencing this rule, RAI put AXA on notice that <u>this</u> stipulation does not follow the default rule because it plainly states that AXA's claims are dismissed "<u>with</u> prejudice," operating "an adjudication on the merits." RAI further

29

put AXA on notice that the dismissal with prejudice applies universally – whether in federal or state court.

Forewarned of the implications and effect of this stipulation (and order), AXA, through its counsel and agent, consciously and deliberately signed the revised stipulation and presented it to the court. R. 894-97. Consequently, by force of law, the plain language of the stipulation acts as an adjudication on the merits, and *res judicata* bars AXA from pursuing the same claims in another action. *Samuels v. Northern Telecom, Inc.*, 942 F.2d 834, 836 (2d Cir. 1991). AXA's apparent mistake should not be forced upon RAI, who fully understood and appreciated the consequences of the "with prejudice" language used and did not believe that the dismissal was purely for lack of jurisdiction. *See* App. Br. at 60; *see also Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986).[16]

Finally, AXA's argument that the stipulation and order cannot be enforced because the Federal court lacked jurisdiction must be rejected. Surely AXA is not

---

[16]    The cases cited by AXA are distinguishable to the extent they were based upon a written decision dismissing claims for lack of jurisdiction and not on the merits. *See, e.g.*, *D'Angelo v. City of N.Y.*, 929 F. Supp. 129 (S.D.N.Y. 1996) (declining to apply *res judicata* where the first action had been dismissed following a written opinion, later appealed, that made clear the dismissal was purely procedural). There is no such agreement or written order here, and AXA's speculation as to what the court was thinking when it modified, signed and entered the order is just that – speculation. R. 894-97. AXA's cases are also largely based on state law, which AXA concedes does not apply. *See* Resp. Br. at 56-66, 58 n.10. The two federal cases cited by AXA other than *D'Angelo* are based upon an old Second Circuit reference that is no longer good law. As to post-stipulation conduct of the parties, RAI has consistently taken the position that the dismissal "with prejudice" ended AXA's declaratory judgment action for all times and in all courts. R. 360-61 (notifying Nevada court, contrary to AXA's argument in its brief, that AXA's claims had been dismissed with prejudice).

30

suggesting that it filed its claims in a court that it knew had no power to adjudicate them. In fact, when RAI notified the Federal court of its intention to move to dismiss and to argue lack of jurisdiction, AXA opposed the jurisdictional argument. R. 948-55. In any event, there was never any determination whether the Federal court did or did not have jurisdiction because AXA chose to discontinue its claims with prejudice, thereby obviating the need for further judicial intervention. R. 894-97. And, even if it were now determined that the Federal court did lack jurisdiction, AXA is nevertheless bound by the stipulation and order. Indeed, the very case that AXA purports to rely upon resolves this point in RAI's favor. *See Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 n.3 (2d Cir. 1999) ("a party cannot seek to avoid the res judicata effect of an earlier judgment by arguing that the court entering the judgment had lacked subject matter jurisdiction over the case"). For all of these reasons, AXA should not be permitted to continue its previously-dismissed claims.

## V.    AXA'S DENIALS OF THE FACTS ALLEGED BY RAI DO NOT JUSTIFY SUMMARY DISMISSAL, AND RAI'S PLENARY CLAIMS SHOULD BE REINSTATED

### A.    Count I of the Plenary Action Seeks Affirmative Relief Different From that Sought By AXA in the State Declaratory Judgment Action

AXA's total disregard for the intent and purpose of the Plenary Action cannot be better demonstrated than by its statement that RAI's contract claim

31

Mazzarelli, J.P., Renwick, Richter, Gische, Clark, JJ.

9105-                                                    Index 650271/11
9106      Renaissance Art Investors, LLC,                       651844/10
              Plaintiff-Appellant,

                    -against-

          AXA Art Insurance Corporation,
              Defendant/Plaintiff-Respondent,

                    -against-

          Renaissance Art Investors, LLC,
              Defendant-Appellant.
          _____

Buchanan Ingersoll & Rooney PC, New York (Kristi A. Davidson of
counsel), for appellant.

Wade Clark Mulcahy, New York (Dennis M. Wade of counsel), for
respondent.
          _____

     Order, Supreme Court, New York County (Bernard J. Fried,

J.), entered July 25, 2011, which denied Renaissance Art

Investors, LLC's (RAI) motion to dismiss AXA Art Insurance

Corporation's declaratory judgment action and granted AXA's cross

motion for summary judgment, declaring that AXA is not obligated

to indemnify RAI with respect to its claimed losses; and order

(same court and Justice), entered September 7, 2011, which,

citing the declaratory judgment order, dismissed RAI's plenary

action in its entirety, unanimously affirmed, without costs.

     The policies purchased by RAI, which covered "losses" as

that term is defined in the policies, contained an unambiguous exclusion, precluding coverage in the event of "[a]ny fraudulent, dishonest or criminal act or acts by: (a) You, anyone else with an interest in the property or your or their employees whether or not committed alone or in collusion with others, whether or not such act or acts be committed during the hours of employment; or (b) Anyone entrusted with the Covered Property."  We reject the assertion that the exclusion does not apply because RAI believed it was purchasing "all risk" coverage and that the term "all-risk" implies comprehensive coverage – including fraud. "[A]s a matter of law[,] insurance coverage, even under an all risk policy, extends only to fortuitous losses" and "[w]hether or not a loss is fortuitous [] is a legal question to be resolved by the Court" (*Redna Marine Corp. v Poland*, 46 FRD 81, 86 [SDNY 1969]), at 87).  Here, the motion court correctly determined that the fraud engaged in by Lawrence Salander, one of RAI's principals, and the Gallery, one of RAI's members, created by Salander for the purpose of holding objects of art purchased by RAI, was not fortuitous.

We also reject RAI's assertions that the exclusion clause did not apply to Salander or the Gallery entrusted to hold the objects, simply because Salander turned out to be a thief (*see*

103

*Abrams v Great American Ins. Co.*, 269 NY 90, 92 [1935]).  Because
the Policies excluded coverage for fraudulent acts of the very
nature which occurred here, summary judgment was properly awarded
to AXA since it is not obligated to indemnify RAI for the loss of
its art.

RAI's claims in its plenary action were properly dismissed
since the breach of contract claim was determined in the
declaratory judgment action; the breach of good faith and fair
dealing claim is duplicative of the breach of contract claim; and
the remaining claims, for negligent misrepresentation and
violations of New York and Nevada trade practices statutes, were
not adequately pleaded.

We have considered the parties' remaining contentions and
find them unavailing.

THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED:  JANUARY 29, 2013

_____
CLERK

104

A-113

# State of New York
## Court of Appeals

*Decided and Entered on the*
*seventh day of May, 2013*

**Present,** HON. JONATHAN LIPPMAN, *Chief Judge, presiding.*

```
Mo. No. 2013-278
Renaissance Art Investors, LLC,
          Appellant,
      v.
AXA Art Insurance Corporation,
          Respondent.
(And Another Action.)
```

Appellant having moved for leave to appeal to the Court of Appeals in the above causes;

Upon the papers filed and due deliberation, it is

ORDERED, that the motion is denied with one hundred dollars costs and necessary reproduction disbursements.

Andrew W. Klein
Clerk of the Court

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| RENAISSANCE ART INVESTORS, LLC, | ) |
| *Plaintiff* | ) |
| v. | ) |
| AXA ART INSURANCE CORPORATION, | ) |
| *Defendant* | ) |

Civil Action No.   13 CV 4452

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Axa Art Insurance Corporation
3 West 35th Street
New York, NY 10001

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Buchanan Ingersoll & Rooney PC
1290 Avenue of the Americas, 30th Floor
New York, NY 10104-3001
Attention: Barry I. Slotnick, Esq.

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

RUBY J. KRAJICK

CLERK OF COURT

Date:  JUN 2 7 2013

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

A-116

13 CV 4452

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RENAISSANCE ART INVESTORS, LLC )
)
*Plaintiff,* )
)
v. )          Case No. _____
)
AXA ART INSURANCE CORPORATION )    **Related to Case No. 10 Civ. 5581 (PAC)**
)
*Defendant.* )
)

**COMPLAINT OF PLAINTIFF RENAISSANCE ART INVESTORS, LLC**

Plaintiff, by and through its undersigned counsel, alleges as follows:

**INTRODUCTION**

1.    "[T]here are few persons in a better position to understand the meaning of an order of dismissal than the district judge who ordered it." *Scelsa v. City Univ. of New York*, 76 F.3d 37, 42 (2d Cir. 1996). This is a civil action in which Renaissance Art Investors, LLC ("RAI") seeks a declaration regarding the meaning of an order of dismissal issued by this Court in a prior case between the parties.

2.    In 2010, AXA Art Insurance Corporation ("AXA") filed suit against RAI in this Court seeking a declaration that AXA has no duty to indemnify RAI for the loss of certain artworks covered by AXA insurance policies. *See AXA Art Ins. Corp. v. Renaissance Art Investors, LLC*, No. 10 Civ. 5581 (S.D.N.Y.) (hereinafter, *AXA v. RAI*). This Court dismissed AXA's action "with prejudice" based upon the parties' stipulation. *See* Stipulation and Order of Dismissal, *AXA v. RAI* (Nov. 29, 2010) (Doc. 12).

3.      The parties also litigated their insurance dispute in New York state court.  RAI argued that this Court's dismissal of AXA's action "with prejudice" is entitled to res judicata effect.  AXA argued that the dismissal has no res judicata effect because, according to AXA, this Court dismissed for lack of subject matter jurisdiction.  Thus far, the state courts have sided with AXA.

4.      To help resolve the dispute, RAI now seeks a declaration that this Court's dismissal of AXA's suit was based upon the parties' stipulation — which requested dismissal "with prejudice" — and was not based upon any finding or determination that this Court lacked subject matter jurisdiction over AXA's claims.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and the doctrine of ancillary jurisdiction.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

7.      Plaintiff Renaissance Art Investors, LLC is a Nevada limited liability company with its principal place of business in Nevada.

8.      Defendant AXA Art Insurance Corporation is a New York corporation with its principal place of business in New York.

## FACTS

9.      RAI and AXA dispute whether AXA is obligated to indemnify RAI for the loss of certain artworks covered by insurance policies issued by AXA to RAI.

**I.      The Federal Court Action**

10.      In July 2010, AXA sued RAI in this Court seeking a declaratory judgment that ·

2

AXA has no duty to indemnify RAI. *See* Complaint, *AXA v. RAI* (Doc. 1).

11.     On October 15, 2010, RAI sent a letter to chambers requesting a pre-motion conference. RAI indicated that it intended to move to dismiss AXA's complaint on the ground that diversity jurisdiction was lacking.

12.     AXA responded with a letter of its own dated November 2, 2010. AXA did not agree with RAI's contention that diversity jurisdiction was lacking. On the contrary, AXA's letter stated that "it is AXA's position that RAI's proposed motion be denied."

13.     No pre-motion conference was held, and RAI did not file a motion to dismiss.

14.     The parties executed and filed a Stipulation of Dismissal, which asked this Court to dismiss AXA's action "with prejudice." *See* Stipulation of Dismissal, *AXA v. RAI* (Doc. 11).

15.     Counsel for AXA drafted the stipulation, including the "with prejudice" language.

16.     This Court "so ordered" the parties' Stipulation of Dismissal and converted it into a Stipulation and Order of Dismissal.

17.     The Court's Stipulation and Order of Dismissal stated:

> IT IS HEREBY STIPULATED AND AGREED TO, by and between the undersigned, the attorneys of record for all the parties to the above action, that … pursuant to Fed. R. Civ. Proc. 41(a)(1)(A)(ii), the above entitled action for declaratory judgment be, and the same hereby is discontinued with prejudice and without costs to either party as against the other. The Clerk of Court shall close this case. … SO ORDERED.

Stipulation and Order of Dismissal, *AXA v. RAI* (Doc. 12).

## II.     The State Court Action

18.     In October 2010, while AXA's federal action was still pending in this Court, AXA filed a duplicative action against RAI in New York state court asserting the same cause of action as in the federal action. *See AXA Art Ins. Corp. v. Renaissance Art Investors, LLC*, No.

651844/10 (Sup. Ct. N.Y. Cnty.).

19.    After this Court dismissed AXA's federal action with prejudice, RAI moved to dismiss AXA's state court action based on the doctrine of res judicata.

20.    AXA opposed RAI's motion on the ground that this Court's dismissal in *AXA v. RAI* had been based, according to AXA, on lack of subject matter jurisdiction.

21.    The New York Supreme Court denied RAI's motion to dismiss. It ruled that this Court's judgment in *AXA v. RAI* was not entitled to res judicata effect because "the Federal Action was discontinued on the basis of lack of subject matter jurisdiction because there was not complete diversity among the parties." *AXA Art Ins. Corp. v. Renaissance Art Investors, LLC*, 936 N.Y.S.2d 57, 2011 WL 3198876, *2 (N.Y. Sup. July 25, 2011).

22.    RAI appealed the New York Supreme Court's ruling to the Appellate Division. The Appellate Division affirmed. *See Renaissance Art Investors, LLC v. AXA Art Ins. Corp.*, 102 A.D.3d 604 (N.Y. App. Div. 2013).

23.    The New York Court of Appeals denied RAI's motion for leave to appeal. *See Renaissance Art Investors, LLC v. AXA Art Ins. Corp.*, Mo. No. 2013-278 (N.Y. May 7, 2013).

24.    The dispute between RAI and AXA is ongoing. RAI intends to seek relief from the New York Supreme Court's judgment on the ground that the court's res judicata ruling was based on a factual mistake, the mistake being the notion that this Court dismissed AXA's federal action for lack of subject matter jurisdiction.

25.    To aid in the resolution of the dispute, RAI asks this Court to declare that its dismissal of AXA's suit in *AXA v. RAI* was based upon the parties' stipulation, which requested dismissal "with prejudice," and was not based upon any finding or determination that this Court lacked subject matter jurisdiction over AXA's claims.

26.    To be clear, RAI is not asking this Court to review the state court's decision denying res judicata effect to this Court's judgment in *AXA v. RAI*.  RAI is only asking this Court to declare as a factual matter that its dismissal of AXA's action was based upon the parties' stipulation and was not based on any finding or determination that this Court lacked jurisdiction. If this Court so declares, RAI will use the declaration in post-judgment proceedings in the state court.

27.    RAI also intends to file a petition for certiorari with the United States Supreme Court.  The declaration that RAI seeks would be of assistance in connection with RAI's petition.

### COUNT I
### Declaration Regarding the Order of Dismissal in *AXA v. RAI*

28.    Plaintiff realleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

29.    The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction," a United States court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

30.    There is an actual controversy between RAI and AXA over the meaning of this Court's order of dismissal in *AXA v. RAI*.  AXA contends that this Court dismissed AXA's case for lack of jurisdiction.  RAI contends that the court did not dismiss for lack of jurisdiction but instead dismissed based on the parties' stipulation seeking dismissal with prejudice.

31.    Given the actual controversy between RAI and AXA, this Court should declare that its judgment in *AXA v. RAI* was not based on a lack of jurisdiction.

32.    The declaration that RAI seeks is proper because it would serve a useful purpose in clarifying or settling the legal issues involved and would finalize the controversy and offer

relief from uncertainty.

## PRAYER FOR RELIEF

Plaintiff respectfully prays for a declaration that this Court's judgment in *AXA Art Insurance Corp. v. Renaissance Art Investors, LLC*, No. 10 Civ. 5581 (S.D.N.Y. Nov. 29, 2010), which dismissed AXA's action "with prejudice," was based not on a lack of jurisdiction, but on the parties' stipulation, drafted by counsel for AXA, which expressly requested dismissal "with prejudice."

Respectfully submitted,

Barry I. Slotnick
Kristi A. Davidson
BUCHANAN INGERSOLL & ROONEY PC
1290 Avenue of the Americas, 30th Floor
New York, New York 10104
(212) 440-4400
barry.slotnick@bipc.com
kristi.davidson@bipc.com

*Of Counsel*:
Paul D. Clement
H. Christopher Bartolomucci
BANCROFT PLLC
1919 M Street N.W., Suite 470
Washington, D.C. 20036
(202) 234-0090
pclement@bancroftpllc.com
cbartolomucci@bancroftpllc.com

Dated: June 26, 2013

*Counsel for Plaintiff*
*Renaissance Art Investors, LLC*

6

A-122

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
RENAISSANCE ART INVESTORS, LLC,

                                            Docket No. 13-cv-4452 (PAC) (HBP)

                         Plaintiff,

          - against -

AXA ART INSURANCE CORPORATION,            ***Proposed Order***

                         Defendant.
--------------------------------------------------------X

       AND NOW, to-wit, this ____ day of _____, 2013, following consideration

of the Motion to Dismiss brought by defendant AXA ART INSURANCE CORPORATION

(hereinafter "AXA"), the Affirmation of Dennis M. Wade, the exhibits annexed thereto,

memorandum of law and reply memorandum of law in support of AXA's motion to dismiss, and

the opposition papers of plaintiff RENAISSANCE ART INVESTORS, LLC (hereinafter "RAI"),

it is hereby ORDERED, ADJUDGED and DECREED that AXA's motion is granted; and

       It is further ORDERED, ADJUDGED and DECREED that RAI's claims and this

action is dismissed with prejudice;

       It is further ORDERED, ADJUDGED and DECREED that AXA is entitled to

interests, costs and disbursements of this action;

       It is further ORDERED, ADJUDGED and DECREED that AXA is entitled to

such other, further and different relief as this Court deems just and proper.


                           _____

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2013 copies of the foregoing *Notice of Motion to Dismiss, Affirmation Of Dennis M. Wade, Memorandum of Law in Support of its Motion of its Motion to Dismiss and Proposed Order* were sent by regular mail and were filed with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to the following:

> Buchanan Ingersoll & Rooney PC
> Barry I. Slotnick, Esq.
> 1290 Avenue of the Americas, 30th Floor
> New York, New York 10104
> *Attorneys for Plaintiff Renaissance Art*
> *Investors LLC*

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements by me are willfully false, I am subject to punishment.

Dated: New York, New York
         August 20, 2013

                          WADE CLARK MULCAHY

                          By: Dennis M. Wade, Esq.
                          Attorneys for *Defendant*
                          AXA Art Insurance Corporation
                          111 Broadway, 9th Floor
                          New York, New York 10006
                          (212) 267-1900
                          Our File No.: 80.5533.1MB

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————
                                                      )
RENAISSANCE ART INVESTORS, LLC,   )
                                                      )
            *Plaintiff*,                        )
      v.                                           )         Case No. 13-cv-4452 (PAC)
                                                      )
AXA ART INSURANCE CORPORATION,  )
                                                      )
            *Defendant*.                      )
————————————————————)

**[PROPOSED] DECLARATION**

Upon consideration of the Complaint of Plaintiff Renaissance Art Investors, LLC

("RAI"), Defendant AXA Art Insurance Corporation ("AXA")'s motion to dismiss, RAI's brief

in opposition, any reply, and the entire record herein, it is, on this _____ day of _____

2013, hereby

ORDERED that RAI's request for a declaratory judgment is GRANTED; and this Court

DECLARES as follows:

In a prior case before the undersigned, *AXA Art Insurance Corp. v. Renaissance Art*

*Investors, LLC*, No. 10-cv-5581 (S.D.N.Y.), AXA sought a declaratory judgment that it has no

duty to indemnify RAI with respect to an alleged loss of insured property.  On November 29,

2010, this Court ordered that "the above entitled action for declaratory judgment be, and the

same hereby is discontinued with prejudice."  Stipulation and Order of Dismissal, No. 10-cv-

5581 (Doc. 12).

This Court's order was not predicated on any finding or determination that the Court

lacked subject matter jurisdiction.  Rather, this Court exercised jurisdiction over AXA's claims

and dismissed them "with prejudice" based upon a Stipulation of Dismissal filed by the parties

requesting such dismissal.  *See* Fed. R. Civ. P. 41(a).

**IT IS SO ORDERED.**

_____
Hon. Paul A. Crotty
United States District Judge

# EXHIBIT 2

**WADE CLARK MULCAHY** | ATTORNEYS

111 Broadway | New York | NY 10006 | 212.267.1900 | 212.267.9470 Fax | www.wcmlaw.com



November 2, 2010

Hon. Paul A. Crotty
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:     AXA Art Insurance Corporation v. Renaissance Art Investors, LLC
        Docket No. 10-cv-5581 (PAC)
        WCM File No.:  80.5533.1MB

Dear Judge Crotty,

We represent plaintiff, AXA Art Insurance Corporation in the above-referenced matter.   We write in response to defendant Renaissance Art Investors, LLC's ("RAI") request for a conference before filing a pre-answer motion to dismiss the above referenced action on the grounds that the Court lacks jurisdiction because the parties are not of diverse citizenship.  For the reasons discussed below, it is AXA's position that RAI's proposed motion be denied.

AXA commenced this action on July 22, 2010.  Defendant RAI sought and obtained three extensions of time -- totaling close to two months -- in which to respond to the complaint.  *See*, PACER Docket entry nos. 3, 6 & 7.  At no point did RAI notify AXA that it had any objections to this court's jurisdiction or that there were any diversity issues until RAI sent its letter to the court on October 15, 2010.

In its October 15 letter, RAI claims that its members include Donald Schupak and Anjes Racing Stables LLC, allegedly a Schupak-controlled entity.  RAI does not provide its operating agreement, formation documents or any other documentary proof supporting this claim.  Rather, RAI attaches an un-notarized statement from Schupak in which he states he is "domiciled" in New York and that he is a member of Anjes which is a New York LLC.  Schupak does not state that he is an equity-sharing member of RAI.

In its complaint in this action, AXA has relied on RAI's prior representations in other actions that it is based and headquartered in Nevada.  For instance, in its state court complaint against the Salander Galleries, RAI alleged that it is a company formed

Hon. Paul A. Crotty
United States District Judge, S.D.N.Y.
November 2, 2010
Page 2

under the laws of the State of Nevada with its principal place of business in Las Vegas, Nevada.  *See* RAI's complaint, annexed hereto as Exhibit A at ¶ 3.

RAI cites *Discovery Ortho Partners, LLC v. Osseous Technologies of America, Inc.*, 2010 WL 3239428 (S.D.N.Y. 2010).  However, the court in *Discovery Ortho* denied the motion to dismiss for lack of diversity because no evidence had been submitted which "directly related to the LLC's membership, such as a charter or tax returns, which could provide more definitive proof of [] membership."  *See Discovery Ortho Partners*, 2010 WL 3239428 at *3.

Here, RAI provides no proof that Schupak or Anjes are equity-sharing members of RAI aside from an un-notarized statement from Donald Schupak.  Nor does RAI provide evidence that Schupak is a New York citizen.

In fact, it has come to the attention of AXA, that RAI has recently filed a separate declaratory judgment action in the State of Nevada.  In the Nevada complaint, RAI alleges that it is a Nevada limited liability company and mentions only one member of RAI -- Binion Art Investors, LLC, which RAI claims is a Nevada limited liability company.  *See,* RAI complaint, annexed hereto as Exhibit B at ¶¶ 2& 7.  RAI references its Operating Agreement, but it has not provided the agreement.

Because RAI has been on the record previously as stating that it is a Nevada entity and has not provided documentary evidence that any equity-sharing member is a New York citizen, any motion to dismiss should be denied or, in the alternative, AXA should be granted leave to amend its complaint.

Denial of RAI's proposed motion is also warranted given the circumstances surrounding RAI's behavior in this action.  We learned only recently that on October 13, 2010 -- almost three months after the commencement of this action and two days before RAI informed the Court or us that RAI intended to move to dismiss this action and that there may be an issue with diversity jurisdiction -- RAI filed a retaliatory declaratory judgment action in State of Nevada District Court, Clark County, Index # A-10-627265-C.  See Exhibit B.  We note that RAI has not informed us or this Court of the existence of the Nevada action and we came to learn of it by our own efforts.[1]

RAI sought and obtained three separate extensions of time to respond to AXA's complaint in this action without ever informing AXA that there was any issue with respect to diversity jurisdiction or RAI's citizenship.  It is clear that RAI's sole purpose in seeking the extensions was to give it more time to file a retaliatory action in

---

[1] As a precaution, upon discovery of the Nevada pleading we filed a declaratory judgment action in New York State Supreme Court, New York County under index number 651844/10.

Hon. Paul A. Crotty
United States District Judge, S.D.N.Y.
November 2, 2010
Page 3

a bald attempt at forum-shopping.  RAI's retaliatory action in Nevada is clearly an attempt at forum shopping because Nevada has no relationship whatsoever to the action and claim aside from the fact that RAI is formed under Nevada law and its members are Nevada citizens.

New York has a far greater relationship with RAI's claim and the policy issues because RAI conducts business and has an address in New York; the policy was issued to RAI at its New York address; the policy contains specific New York endorsements and New York law should be applied to interpretation of the policy; the property allegedly owned by RAI was located in New York; the facts surrounding the alleged loss all occurred in New York; RAI entered into a consignment agreement with Salander's Gallery located in New York; the artworks were located in Salander's Gallery in New York; many if not most of the witnesses and evidence are located in New York and AXA is based in New York.  The fact that Nevada has no relationship with the claim and policy is evidenced by the fact that RAI used a New York address in seeking the policy.

For these reasons, it is AXA's position that RAI's proposed motion be denied unless it is able to provide evidence of its claim that Schupak is a member and a New York citizen.

Sincerely,

WADE CLARK MULCAHY

Dennis M. Wade (DMW-4338)

Michael A. Bono (MB-4776)
DMW/MAB/MS
*Enclosures*
K:\5533\oc\opp to RAI mtd.doc

cc:    *Via Hand Delivery*
       Barry I. Slotnick, Esq.
       Buchanan Ingersoll & Rooney PC
       620 Eighth Avenue, 23rd Floor
       New York, New York 10018

A-131

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AXA ART INSURANCE CORPORATION,

                    Plaintiff,        Civ. Action No. 10 CIV. 5581 (Crotty)

      -against-             STIPULATION OF DISMISSAL

RENAISSANCE ART INVESTORS, LLC,

                    Defendant.

      IT IS HEREBY STIPULATED AND AGREED TO, by and between the undersigned,

the attorneys of record for all the parties to the above action, that whereas no party hereto is an

infant, incompetent person for whom a committee has been appointed or conservatee and no

person not a party has an interest in the subject matter of this action, pursuant to Fed. R. Civ.

Proc. 41(a)(1)(A)(ii), the above entitled action for declaratory judgment be, and the same hereby

is discontinued with prejudice and without costs to either party as against the other.

Dated: New York, New York
November 29, 2010

WADE CLARK MULCAHY          BUCHANAN INGERSOLL & ROONEY PC

Michael A. Bono, Esq.            Kristi A. Davidson, Esq.
111 Broadway, 9th Floor          620 Eighth Avenue, 23rd Floor
New York, New York 10006       New York, New York 10018
(212) 267-1900                (212) 440-4562
*Attorneys for Plaintiff*         *Attorneys for Defendant*
*AXA Art Insurance Corporation*    *Renaissance Art Investors, LLC*

Deleted: .

Deleted: as to all parties.

Deleted: SO ORDERED:

                               U.S.D.J.

# EXHIBIT 4

972

**MEMORANDUM OF LAW, FOR PLAINTIFF, IN OPPOSITION TO MOTION TO DISMISS, DATED APRIL 4, 2011 [972-988]**

FILED: NEW YORK COUNTY CLERK 04/04/2011

NYSCEF DOC. NO. 40

INDEX NO. 651844/2010

RECEIVED NYSCEF: 04/04/2011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x

AXA ART INSURANCE CORPORATION,

                            Plaintiff,

Index No. 651844/10

   - against -

RENAISSANCE ART INVESTORS, LLC,

                         Defendant.

-------------------------------------------------------------------x

**PLAINTIFF AXA'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT RAI'S MOTION TO DISMISS**

WADE CLARK MULCAHY
Attorneys for Plaintiff:
AXA ART INSURANCE CORPORATION
111 Broadway, 9th Floor
New York, NY 10006
(212) 267-1900
Our File No.: 80.5533.1

Dennis M. Wade
Michael A. Bono
Of Counsel

judicial resources with an unnecessary proof hearing. At the time AXA and RAI entered into the stipulation of discontinuance, RAI was aware that both the instant action and an action commenced by RAI in Nevada were pending. In addition, before the attorneys signed the stipulation of discontinuance, RAI's attorney agreed that AXA that it would be able to "use in the [pending] Nevada action" certain documents that RAI had produced in the federal action.

Further, at the time that AXA and RAI entered into the stipulation of discontinuance, RAI had not answered or otherwise responded to AXA's complaint in the federal action. The stipulation does not state that the discontinuance was on the merits and does not address the two pending actions. Notably, neither side furnished Judge Crotty with any information or documents regarding the merits of the action.  The sole issue under discussion was whether the Nevada LLC had a principal member who resided in New York.

It is clear from the undisputed facts and documents that the discontinuance of the Federal Action was not an adjudication on the merits but was based purely on procedural grounds: namely, the federal court's lack of subject matter jurisdiction over this dispute. Because the discontinuance of the Federal Action was not an adjudication on the merits, RAI's motion must be denied.

**STATEMENT OF FACTS**

A full statement of the relevant facts is set forth in the affirmation of Dennis M. Wade, which is incorporated herein by reference.

2

# EXHIBIT 5

New York County Clerk's Index Nos.
650271/11 and 651844/10

*To be argued by:*
DENNIS M. WADE

# Supreme Court

## State of New York

### APPELLATE DIVISION — FIRST DEPARTMENT

---

RENAISSANCE ART INVESTORS, LLC,

*Plaintiff-Appellant,*

against

AXA ART INSURANCE CORPORATION,

*Defendant-Respondent.*

Action No. 1 Index No. 650271/11

AXA ART INSURANCE CORPORATION,

*Plaintiff-Respondent,*

against

RENAISSANCE ART INVESTORS, LLC,

*Defendant-Appellant.*

Action No. 2 Index No. 651844/10

## BRIEF OF DEFENDANT/PLAINTIFF-RESPONDENT AXA ART INSURANCE CORPORATION

WADE CLARK MULCAHY
*Attorneys for Defendant-Respondent in Action No. 1 and Plaintiff-Respondent in Action No. 2*
111 Broadway, 9th Floor
New York, New York 10006
(212) 267-1900
dwade@wcmlaw.com

FRANKLIN COURT PRESS, INC.— 212-594-7902
(312-12)
*Reproduced on Recycled Paper*

## POINT II

**THE FEDERAL ACTION WAS DISCONTINUED PURELY ON THE GROUNDS THAT THE COURT LACKED SUBJECT MATTER JURISDICTION AND IT WAS NOT AN ADJUDICATION ON THE MERITS**

### A.    The Doctrine Of *Res Judicata* With Respect To Stipulations Of Discontinuance

"Under the doctrine of res judicata, a party may not litigate a claim where a judgment *on the merits* exists from a prior action between the same parties involving the same subject matter." *In re Hunter*, 4 N.Y.3d 260, 269 (2005) (emphasis added). Where, however, a prior action was not determined on the merits, the doctrine of *res judicata* does not bar subsequent litigation of the claim. *See Springwell Navigation Corp. v. Sanluis Corporacion, S.A.*, 81 A.D.3d 557 (1st Dep't 2011) (plaintiff not precluded from reasserting same claims where dismissal of prior action was not on the merits).

In determining whether a stipulation of discontinuance of an earlier action constitutes a judgment on the merits, courts "narrowly interpret" the stipulation "when the interests of justice, or the particular equities involved, warrant such an approach." *See Dolitsky's Dry Cleaners, Inc. v. Y L Jericho Dry Cleaners, Inc.*, 203 A.D.2d 322, 323 (2d Dept. 1994). *See also Singleton Mgmt., Inc. v. Compere*, 673

56

# EXHIBIT 6

# Supreme Court of the United States
## Office of the Clerk
### Washington, DC  20543-0001

**William K. Suter**
Clerk of the Court
(202) 479-3011

July 25, 2013

Mr. H. Christopher Bartolomucci
Bancroft PLLC
1919 M Street, N.W., Suite 470
Washington, DC  20036

> Re:  Renaissance Art Investors, LLC
>       v. AXA Art Insurance Corp.
>       Application No. 13A109

Dear Mr. Bartolomucci:

The application for an extension of time within which to file a petition for a writ of certiorari in the above-entitled case has been presented to Justice Ginsburg, who on July 25, 2013 extended the time to and including October 4, 2013.

This letter has been sent to those designated on the attached notification list.

Sincerely,

**William K. Suter**, Clerk

by

Sandy Spagnolo
Case Analyst

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

William K. Suter
Clerk of the Court
(202) 479-3011

NOTIFICATION LIST

Mr. H. Christopher Bartolomucci
Bancroft PLLC
1919 M Street, N.W., Suite 470
Washington, DC  20036


Clerk
Appellate Division, Supreme Court of New York, First Judicial Department
27 Madison Avenue
New York, NY  10010

# EXHIBIT 7



**WADE·CLARK·MULCAHY** 111 Broadway, New York, NY 10006 Telephone 212.267.1900 Fax 212.267.9470
ATTORNEYS AT LAW

**ATTORNEYS**

July 12, 2013

***Via Email***   *Marlon_Ovalles@nysd.uscourts.gov;*
*CrottyNYSDChambers@nysd.uscourts.gov*

Hon. Paul A. Crotty
United States District Judge
Southern District of New York
500 Pearl Street, Chambers 735
New York, NY 10007

*Defendant's Request for Pre-Motion Conference*

Re:   *Renaissance Art Investors, LLC v. AXA Art Insurance Corporation*
Docket no. 13-cv-4452 (PAC) (HBP)

Dear Honorable Judge Crotty:

We represent Defendant AXA Art Insurance Corporation, and we request a pre-motion conference for permission to file a motion to dismiss the complaint filed by plaintiff Renaissance Art Investors, LLC ("RAI") because: (1) This dispute has already been resolved in AXA's favor by the New York State Supreme Court, First Department, and Court of Appeals; and (2) This Court lacks jurisdiction to hear this matter.  As such, RAI's attempt to bring this case back to life is sanctionable.

This dispute involves an insurance claim made by RAI to its insurer, AXA, for the loss of Renaissance art that was stolen by an RAI principal, Larry Salander.  AXA denied coverage because the loss was not fortuitous and because the policy specifically excluded losses arising from dishonest acts of the insured or persons to whom the art was consigned.  The Supreme Court and the First Department ruled that AXA properly denied coverage for RAI's claim and the Court of Appeals rejected RAI's request for leave to appeal.

Despite the finality of the Court of Appeals' ruling, RAI seeks to revive its claim by asking this Court to declare that a complaint filed by AXA -- previously assigned to this Court, Docket No. 10-cv-5581 ("Prior Lawsuit") -- was dismissed pursuant to a so-ordered stipulation, and that this Court did not address the issue of subject matter jurisdiction.  Yet, RAI acknowledges that this Court lacked jurisdiction over the Prior Lawsuit and, in any event, the declaration sought by RAI is wholly irrelevant.

**This Issue has Already been Resolved in AXA's Favor**

On July 22, 2010, AXA commenced the Prior Lawsuit against RAI in federal court on the basis that RAI was an LLC registered in Nevada.  As a matter of lawyerly courtesy, a series of extensions were provided to RAI, giving it until October 22, 2010, to respond to the complaint.


July 12, 2013
Page 2

On October 15, 2010, RAI wrote to the Court seeking permission to move to dismiss AXA's complaint on the basis that this Court lacked diversity jurisdiction because a member of its LLC was a New York resident. This information was known to RAI as soon as the AXA complaint was filed in July. And, as it turns out, RAI used the delay to file its own lawsuit in Clark Court, Nevada, which was later dismissed on forum *non-conveniens* grounds.

Upon learning of the jurisdictional issue, AXA commenced a declaratory judgment action in New York State Supreme Court and, once AXA received sufficient proof that RAI's member was a New York resident, AXA agreed to dismiss the Prior Lawsuit, advising counsel there was no need to attend the November 29, 2010, pre-motion conference before this Court. RAI then unsuccessfully argued in state court that litigation of the insurance dispute was barred because this Court had dismissed the Prior Lawsuit. The Supreme Court found that the Prior Lawsuit had not been litigated on the merits, rejected RAI's argument that the case was barred by the doctrine of *res judicata*, and granted summary judgment in favor of AXA. *See AXA Art Ins. Corp. v. Renaissance Art Investors, LLC*, 32 Misc. 3d 1223(A), 936 N.Y.S.2d 57 (Sup. Ct. N.Y. Co. 2011).

RAI appealed the trial court's decision to the First Department, making the same argument -- that Your Honor dismissed AXA's claims with prejudice in the Prior Lawsuit without specifically holding that the Court lacked jurisdiction over RAI's claims. The Appellate Division affirmed the trial court's decisions and ruled that RAI's contentions were without merit. *See Renaissance Art Investors, LLC v. AXA Art Ins. Corp.*, 102 A.D.3d 604, 605 (1st Dept. Jan 29, 2013). Still not satisfied, RAI asked the Court of Appeals to entertain the same argument but the Court declined to do so and imposed costs. *See Renaissance Art Investors, LLC v. AXA Art Ins. Corp.*, 21 N.Y.3d 855 (May 7, 2013).

Now, despite being rebuffed by the New York Court of Appeals, RAI attempts to re-litigate the same point. RAI alleges that the state courts failed to apply the doctrine of *res judicata* because they were under the "mistaken impression" that Your Honor had made a finding that there was no federal jurisdiction to hear the case. But RAI made *this very* argument to the Appellate Division and the court ruled that RAI's contentions were without merit. Thus, even if Your Honor issues the declaration RAI seeks, it would have no impact on the resolved cases because the crux of the holdings below were that the Prior Lawsuit was not decided on the merits -- making the basis of the dismissal irrelevant. In fact, if RAI were to commence another state action making the same argument that it made in the prior state lawsuits, it will likely be sanctioned by the state court. *See Sud v. Sud*, 227 A.D.2d 319, 319 (1st Dept. 1996) (sanctions properly imposed because party commenced a new lawsuit asserting claims that the court had already dismissed). Therefore, even if this Court had jurisdiction to entertain this lawsuit, Your Honor should dismiss this lawsuit.

**Lack of Jurisdiction**

As noted above, it was RAI that first argued that this Court lacked diversity jurisdiction over the parties. In an attempt to create jurisdiction where none exists, RAI asserts that this Court has "ancillary jurisdiction" over this matter. Yet ancillary jurisdiction exists in only two instances, both of which are absent here. The first type of ancillary jurisdiction applies "to claims having a

July 12, 2013
Page 3

factual and logical dependence on the primary lawsuit, . . . *but that primary lawsuit must contain an independent basis for federal jurisdiction*."  *See Peacock v. Thomas*, 516 U.S. 349, 355 (1996) (emphasis added and quotations omitted).  Here, as RAI has admitted, there is no independent basis for asserting federal jurisdiction over the primary insurance dispute resolved in AXA's favor by the New York State appellate courts.

The second type of ancillary jurisdiction exists where a party seeks to enforce a prior federal judgment.  *See Peacock*, 516 U.S. at 360.  Here, RAI is not seeking to enforce a federal judgment as no judgment was entered in the Prior Lawsuit.  In any event, this Court could not have entered judgment in the Prior Lawsuit because it lacked jurisdiction over the now-resolved insurance dispute.

RAI claims in its complaint that the Declaratory Judgment Act, 28 U.S.C. § 2201(a), grants this Court the ability to declare the rights of any interested party whether or not further relief can be sought.  But RAI's argument ignores clear Supreme Court precedent that the Declaratory Judgment Act is "procedural only" and the Act does not extend a federal court's jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co*., 339 U.S. 667, 671 (1950).  This Court must therefore dismiss RAI's complaint.

**Sanctionable Conduct**

FRCP Rule 11 permits courts to sanction attorneys and parties for filing a lawsuit to harass the defendant or to needlessly increase litigation costs.  If it is clear to an objective attorney that the lawsuit was "destined to fail based on the facts and existing precedent, and where no reasonable argument could be advanced to change or extend the present law, rule 11 requires a sanction." *See Hoatson v. New York Archdiocese*, 2007 WL 431098, *9 (S.D.N.Y. 2007) *aff'd*, 280 F. App'x 88 (2d Cir. 2008) (quotation and citation omitted).

Here, without any basis in fact or law, RAI attempts to resurrect a claim that was fully litigated and rejected by the Court of Appeals.  RAI fails to mention that it already sought the very same relief and that the Appellate Division rejected RAI's argument.  In addition, no reasonable argument can be made that this Court has ancillary jurisdiction.  Finally, the fact that the relief that RAI seeks will have no effect in state court, shows that this action is a blatant attempt to increase AXA's litigation costs.

Respectfully,

WADE CLARK MULCAHY
*/s/*
**Dennis M. Wade**

*/s/*
**Michael A. Bono**

cc: ***Via Email***: Barry Slotnick
           *Attorney for Plaintiff*
           barry.slotnick@bipc.com

**A-146**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                      :
RENAISSANCE ART INVESTORS, LLC,    :
                      :
          Plaintiff,         :
                      :
   -against-              :
                      :
AXA ART INSURANCE CORPORATION,    :
                      :
          Defendant.      :
                      :
----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-17-14

13 Civ. 4452 (PAC)

**<u>ORDER</u>**

HONORABLE PAUL A. CROTTY, United States District Judge:

On July 22, 2010, AXA Art Insurance Company ("AXA") brought an action against Renaissance Art Investors, LLC ("Renaissance") relating to AXA's denial of RAI's claim for insurance coverage (the "Federal Action"). On October 15, 2010, Renaissance requested a pre-motion conference on its motion to dismiss on the ground that diversity jurisdiction was lacking. On November 29, 2010, AXA and Renaissance submitted, and the Court signed, a Stipulation and Order of Dismissal (the "Order"), dismissing AXA's case "with prejudice."

Renaissance then moved to dismiss an identical action pending in New York State Supreme Court (the "State Action") on the basis of res judicata. On July 25, 2011, New York State Supreme Court Justice Bernard J. Fried held that the Federal Action was dismissed for lack of jurisdiction and therefore, regardless of the use of the phrase "with prejudice," the Order was not an adjudication on the merits. As a result, Justice Fried held that res judicata did not bar the State Action and denied the motion to dismiss.[1]

To bolster its claims on a motion for post-judgment relief in the State Action, Renaissance now seeks a declaratory judgment from this Court stating that the Order was not

---

[1] On January 29, 2013, the Appellate Division affirmed Justice Fried's opinion without addressing the issue of res judicata. On May 7, 2013, the Court of Appeals denied Renaissance's motion for leave to appeal.

1

based on any jurisdictional finding. On August 20, 2013, AXA moved to dismiss, in part, for failure to state a claim and lack of subject-matter jurisdiction. The Court GRANTS AXA's motion.

Renaissance does not present justiciable claims under the Declaratory Judgment Act (the "Act"), 28 U.S.C. § 2201(a). The Act provides that in the case of an "actual controversy," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007) (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240 (1937)). An actual controversy exists if "the facts alleged, under all of the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127. Here, Renaissance asks this Court to explain the meaning of the parties' Stipulation and Order entered in 2010, and interpreted by Justice Fried more than two years ago. Any immediacy or reality to this purported controversy has long passed. Instead, "the declaratory judgment [Renaissance] seek[s] would be merely 'an opinion advising what the law should be . . .,'" which [Renaissance] would then hope to use to renew [the issue] in state court." *See Commonwealth Plaza Condo. Ass'n v. City of Chi.*, 693 F.3d 743, 748 (7th Cir. 2012). Such an advisory opinion is not within the Court's powers.

Even if an "actual controversy" existed, the Court would decline to exercise its jurisdiction over the matter. Courts have the discretion to decline to exert jurisdiction over an action for declaratory judgment based on "equitable, prudential, and policy arguments." *See*

2

*MedImmune*, 549 U.S. at 136; *see also* 28 U.S.C. § 2201(a) ("In a case of actual controversy

within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal

relations of any interested party seeking such declaration" (emphasis added)).   Specifically, a

court should consider "(1) whether the judgment will serve a useful purpose in clarifying or

settling the legal issues involved; and (2) whether a judgment would finalize the controversy and

offer relief from uncertainty."   *See Dow Jones & Co., v. Harrods Ltd.*, 346 F.3d 357, 359 (2d

Cir. 2003).   Rather than being useful or offering finality, a declaratory judgment here offers only

more uncertainty:  Justice Fried may not be bound by this Court's opinion and therefore may

deny Renaissance's motion for post-judgment relief.   Even more fundamental, a declaratory

judgment would allow Renaissance to evade the timing requirements of Federal Rule of Civil

Procedure 60(b) by seeking the same relief from this Court, but styling it as a request for

declaratory judgment.   *See* Fed. R. Civ. P. 60(c)(1) ("A motion under Rule 60(b) must be made

within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of

the judgment or order or the date of the proceeding.").   A declaratory judgment is therefore

unwarranted.

Finally, the Court lacks subject-matter jurisdiction over the dispute.   A demand for

declaratory judgment under the Act does not create subject-matter jurisdiction.   *See Aetna Life*

*Ins. Co.*, 300 U.S. at 240.   Instead, Renaissance claims that jurisdiction exists under 28 U.S.C. §

1331 and the doctrine of ancillary jurisdiction.   *See* Compl. ¶ 5.   First, Section 1331 requires that

the action "arise[] under the Constitution, laws, or treaties of the United States."   According to

Renaissance, its claim "arises under" the Court's Order, and therefore arises under federal law.

But the sole case Renaissance cites in support is *Illinois v. City of Milwaukee*, 406 U.S. 91

(1972), where the Supreme Court held that federal jurisdiction is established when a claim arises

under federal common law.  *Id.* at 100.  Furthermore, if Renaissance's argument were correct, any party could initiate a new action for declaratory judgment on the basis of a court's prior decision.  That is not the law.  Second, Renaissance claims ancillary jurisdiction even though the Federal Action is closed and Renaissance initiated a new action to seek relief.  In fact, Renaissance previously argued that the Federal Action should be dismissed because there was no diversity jurisdiction.  Renaissance cannot have it both ways.  As a result, the Court holds that it lacks subject-matter jurisdiction to entertain this action.

Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court GRANTS AXA's motion to dismiss with prejudice.  The Clerk of Court is directed to enter judgment and to terminate this case.

Dated:  New York, New York
        March 17, 2014

SO ORDERED

PAUL A. CROTTY
United States District Judge

4

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/24/2014

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

RENAISSANCE ART INVESTORS, LLC,

                Plaintiff,

13 **CIVIL** 4452 (PAC)

-against-

**JUDGMENT**

AXA ART INSURANCE CORPORATION,

                Defendant.
-----------------------------------------------------------X

Whereas on August 20, 2013, AXA having moved to dismiss, in part, for failure to state a

claim and lack of subject matter jurisdiction, and the matter having come before the Honorable Paul

A. Crotty, United States District Judge, and the Court, on March 17, 2014, having rendered its Order

pursuant to Fed. R. Civ. P. 12(b)(1), granting AXA's motion to dismiss with and directing the Clerk

of the Court to entered judgment and to terminate this case, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the

Court's Order dated March 17, 2014, pursuant to Fed. R. Civ. P. 12(b)(1), the Court grantes AXA's

motion to dismiss with prejudice; accordingly, the case is closed.

**Dated:** New York, New York
      March 24, 2014

**RUBY J. KRAJICK**
_____
Clerk of Court

BY: _____
Deputy Clerk

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RENAISSANCE ART INVESTORS, LLC

*(In the space above enter the full name(s) of the plaintiff(s)/petitioner(s).)*

- against -

AXA ART INSURANCE CORPORATION

*(In the space above enter the full name(s) of the defendant(s)/respondent(s).)*

13 ___ Civ. 4452 ___ (PAC) ( ___ )

**NOTICE OF APPEAL
IN A CIVIL CASE**

Notice is hereby given that  RENAISSANCE ART INVESTORS, LLC
*(party)*

hereby  appeals to the United States Court of Appeals for the Second Circuit from the Judgment

dismissing this action (Doc. # 18), and the Order of the Honorable Paul A. Crotty entered on March 17,

*(describe the judgment)*

2014, which granted defendant's motion to dismiss this action, and which directed the clerk to enter

judgment dismissing this action pursuant to Fed. R. Civ. P. 12(b)(1) (Doc. # 17),

entered in this action on the 24th ___ day of March ___, 2014 ___.
*(date)*        *(month)*        *(year)*

/s/ Kristi A. Davidson
*Signature*

1290 Avenue of the Americas, 30th Floor
*Address*

New York, New York 10104
*City, State & Zip Code*

DATED: April ___ 16 , 2014 ___        ( 212 ) 440 - 4562
*Telephone Number*

**NOTE:** To take an appeal, this form must be received by the *Pro Se* Office of the Southern District of New York within thirty
(30) days of the date on which the judgment was entered, or sixty (60) days if the United States or an officer or agency of the
United States is a party.

*Rev. 05/2007*